963 So.2d 1 (2006)
Quang Thanh TRAN, Appellant
v.
STATE of Mississippi, Appellee.
Johnson Quoc Nguyen, Appellant
v.
State of Mississippi, Appellee.
Nos. 2004-KA-00368-COA, 2004-KA-00369-COA.
Court of Appeals of Mississippi.
May 16, 2006.
Rehearing Denied October 31, 2006.
*3 Julie Ann Epps, Thomas Richard Mayfield, Thomas E. Royals, Jackson, attorneys for appellant.
Office of the Attorney General by W. Daniel Hinchcliff, attorney for appellee.
Before KING, C.J., BARNES and ROBERTS, JJ.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. On January 30, 2004, a jury sitting before the Rankin County Circuit Court *4 found Johnson Quoc Nguyen and Quan Thanh Tran guilty of money laundering in violation of Section 97-23-101 of the Mississippi Code. The circuit court sentenced both Nguyen and Tran to twenty years in the custody of the Mississippi Department of Corrections. Aggrieved, Nguyen and Tran appeal. They raise the following six issues, listed verbatim:
I. THE EVIDENCE WAS INSUFFICIENT TO PROVE THE GUILT OF JOHNSON QUOC NGUYEN BEYOND A REASONABLE DOUBT.
II. THE EVIDENCE IS INSUFFICIENT TO PROVE THE GUILT OF QUANG THANH TRAN BEYOND A REASONABLE DOUBT.
III. THE INDICTMENT IS CONSTITUTIONALLY INSUFFICIENT UNDER THE STATE AND FEDERAL CONSTITUTIONS.
IV. THE COURT ERRED IN DENYING APPELLANTS' MOTIONS TO SUPPRESS THE EVIDENCE.
V. THE TRIAL COURT ERRED IN NOT SUPPRESSING THE EVIDENCE OF THE MONEY BECAUSE THE STATE LACKED PROBABLE CAUSE FOR ITS SEIZURE.
VI. THE COURT COMMITTED PLAIN ERROR AND/OR COUNSEL WAS INEFFECTIVE IN ALLOWING THE ADMISSION OF THE TESTIMONY OF AGENT LARRY DAVIDSON THAT THE MONEY IN QUESTION WAS THE PRODUCT OF ILLEGAL DRUG TRAFFICKING.
We find that the circuit court erred when it denied Nguyen's motion for judgment notwithstanding the verdict. Accordingly, we reverse Nguyen's conviction and render a judgment of acquittal for Nguyen. However, we find no error in Tran's conviction. As such, we affirm.

FACTS
¶ 2. On December 10, 2002, Deputy Shannon Penn, an interdiction officer with the Rankin County Sheriff's Department, sat in the median of Interstate Highway 20 near the exit for East Brandon, Mississippi. Deputy Penn's vehicle faced north. The westbound traffic on I-20 passed in front of him from his right to left.
¶ 3. Around 11:00 a.m., Deputy Penn saw a westbound 1996 Ford F-150 pickup cross the right-hand "fog line." Deputy Penn testified that the Ford crossed the fog line when it was nearly directly in front of him. At most, the Ford was twenty yards from Deputy Penn when it crossed the fog line. Deputy Penn decided to stop the Ford pickup for careless driving.
¶ 4. After he pulled the Ford over, Deputy Penn approached the pickup and requested identification from the three people inside. Deputy Penn found that Quan Thanh Tran drove the pickup with two passengers, Johnson Quoc Nguyen and Hanh Ti My Le. Deputy Penn walked back to his patrol car, where he requested information as to whether any of the occupants had outstanding warrants. As he waited for a response, Deputy Penn returned to the pickup and conducted what he termed a "roadside interview." That is, Deputy Penn asked the three occupants where they came from, where they were going, and how long they were going to be there. The three occupants indicated that they left Charlotte, North Carolina and were traveling on I-20 on their way to their destination  Houston, Texas. They said they borrowed the truck and were going to Houston to shop.
¶ 5. Deputy Penn became suspicious. At trial, he testified that "it was some things about their travel itinerary. They were *5 going to a source city, coming from North Carolina, third party vehicle, borrowed type situation." Deputy Penn asked Tran if he could search the pickup. According to Deputy Penn, Tran consented to a search. Deputy Penn knelt down and looked underneath the pickup. Deputy Penn found that the pickup had dual gas tanks. Deputy Penn also reportedly saw indications that one of the gas tanks had been removed or otherwise tampered with. He based his suspicions on the facts that: (a) the fuel lines and wires were running to the tank but they were all cut and bent over; (b) the spare tire had been moved; (c) the nuts and the bolts to the tank had been taken off recently because they were shiny and were not rusty; and, (d) the bands that held the tank in place, he could tell they had been removed because of the marks on the tank.
¶ 6. Deputy Penn suspected that there might be contraband in that gas tank. Accordingly, Deputy Penn asked the three occupants to follow him to the shop at the Rankin County Sheriff's Department. From the record, it appears that the three occupants followed Deputy Penn willingly. There is no indication that they objected to following him.
¶ 7. Once they arrived at the sheriff's department, Deputy Penn put the pickup on a lift. Deputy Penn then removed the suspicious gas tank. No gasoline was in the tank, but there was an unusual access panel on the tank. It appeared that someone cut an access hatch into the top of the tank and placed hinges on that access panel. In short, someone cut a secret panel into the gas tank. When Deputy Penn looked inside the gas tank, he found $170,040. The money was bundled and wrapped in clear plastic wrap, then in tin foil and then vacuum sealed wrap. Deputy Penn then interviewed Tran, Nguyen, and Le. Deputy Penn recorded the interviews on video, though Tran, Nguyen, and Le were not aware of it.
¶ 8. They all said they were going to Houston. They all said they were going shopping. They all said that the truck had been purchased within a week or two of the date of the stop. All three occupants of the pickup denied any knowledge of the money. All three occupants claimed that the pickup belonged to Nguyen's girlfriend in North Carolina.
¶ 9. After the interrogations, the Rankin County Sheriff's Department (RCSD) retained the money found in the gas tank. All three occupants were released. Tran received a traffic citation for crossing over the fog line. Meanwhile, Rankin County initiated a civil forfeiture proceeding.
¶ 10. The record contains a document entitled "Rankin County Sheriff's Department's Response to Motion for Relief from Default Judgment." That document indicates that the Rankin County Sheriff's Department initiated a forfeiture action against the $170,000. Further, it appears that on January 28, 2003, the RCSD received a default judgment against the money. Afterwards, Tran, Nguyen, and Le filed a motion for relief from that default judgment.
¶ 11. On July 17, 2003, Nguyen and Le submitted sworn affidavits in which they denied any knowledge of the money. Tran also submitted a sworn affidavit and claimed that the money was his and that it represented his and his family's life savings. Tran stated that he kept the money in the gas tank because he did not trust banks. It appears that only after Tran submitted his sworn affidavit did the State initiate criminal proceedings.
¶ 12. On January 26, 2004, the circuit court conducted a hearing on Tran's, Nguyen's, and Le's pretrial motions to quash the indictment and to suppress the evidence *6 found as a result of Deputy Penn's searches. As for the motion to quash the indictment, Tran, Nguyen, and Le claimed that the indictment against them was so vague and ambiguous that it did not apprise them of the charge against them with sufficiency to adequately prepare a defense. Specifically, they argued that the prosecution failed to identify the "specified unlawful activity" alleged in the indictment against them. The defendants' attorney stated, "I don't know whether they're talking about proceeds from gun running or proceeds from gambling or proceeds. It just says, `Specified unlawful activity.' And I don't know how to defend an ambiguous statement like that." The circuit court overruled the defendants' motion to quash the indictment because the indictment tracked the language of the statute. The circuit court held, "I think the case law is legion on that. If it has the statutory language, it adequately informs the defendant of the charges against him."
¶ 13. As for the defendants' motion to suppress, the defendants argued that the circuit court should suppress the evidence that resulted from Deputy Penn's searches because the stop was improper. According to the defendants, Deputy Penn had no reasonable basis to stop them because he could not have observed the pickup cross the fog line from where he was sitting in the median. The circuit court held that Deputy Penn's stop was a valid traffic stop. As such, the circuit court denied the defense's motion to suppress.
¶ 14. Trial started on January 29, 2004. The State called Shannon Penn as its first witness. After Deputy Penn testified, the prosecution called Agent Larry Davidson, a thirteen year veteran of the Federal Drug Enforcement Administration. At that time, Agent Davidson was in charge of a local state and federal anti-drug task force located in Brandon, Mississippi. The prosecution questioned Agent Davidson about his training and experience. Afterwards, the prosecution tendered Agent Davidson as an expert witness "in drug trafficking and the proceeds of drug trafficking." Counsel for the defense voir dired Agent Davidson regarding his qualifications and eventually accepted Agent Davidson as an expert witness.
¶ 15. Agent Davidson then testified that he examined the modified gas tank, read the transcripts of the three defendants' statements, saw the photographs of the money that Deputy Penn seized, and examined the offense report. Agent Davidson concluded that the money was derived from narcotics trafficking. The prosecution rested after Agent Davidson's testimony.
¶ 16. Afterwards, the defense rested without calling any witnesses. The jury deliberated and found Tran and Nguyen guilty, but found Le not guilty. Posttrial, Tran and Nguyen then filed unsuccessful motions for judgment notwithstanding the verdict. Tran and Nguyen appeal.

ANALYSIS
I. THE EVIDENCE WAS INSUFFICIENT TO PROVE THE GUILT OF JOHNSON QUOC NGUYEN BEYOND A REASONABLE DOUBT.
¶ 17. Nguyen takes issue with the circuit court's decision to overrule his motion for judgment notwithstanding the verdict. According to Nguyen, the evidence against him was insufficient to prove beyond a reasonable doubt that he was guilty of money laundering.
¶ 18. When considering a challenge to the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the *7 crime beyond a reasonable doubt. Bush v. State, 895 So.2d 836(¶ 16) (Miss.2005). If the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," we must reverse and render. Id. "However, if a review of the evidence reveals that it is of such quality and weight that, `having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,' the evidence will be deemed to have been sufficient." Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)).
¶ 19. Nguyen was indicted under Section 97-23-101(1)(b)(ii)(1) of the Mississippi Code. According to that section:
Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the state to or through a place outside the state or to a place in the state from or through a place outside the state; (ii) Knowing that the monetary instrument or funds involved in the transportation represent the proceeds of some form of unlawful activity and knowing that such transportation is designed in whole or in part: 1. To conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . shall be sentenced to a fine of Five Hundred Thousand Dollars ($500,000.00) or twice the value of the monetary instrument or funds involved in the transportation, whichever is greater, or imprisonment for not more than twenty (20) years, or both.
Miss.Code Ann. § 97-23-101(1)(b)(ii)(1) (Rev.2003).
¶ 20. We can find no Mississippi case that has previously addressed this statute. However, Section 97-23-101(1)(b)(ii)(1) virtually tracks word-for-word with its federal counterpart, 18 U.S.C. § 1956(a)(2)(B)(i).
¶ 21. The State strictly focuses its argument on the prospect that the money was derived from the sale of narcotics and that Tran knew that the money was hidden in the gas tank. The State argues that Nguyen and Tran had a joint enterprise and that Nguyen exercised dominion and control over the money. The State goes to great length to connect the money to narcotics and to connect Nguyen to the money. However, the State either mistakenly or intentionally omits discussion of the relevant statute. Additionally, the State inaccurately claims that Nguyen submitted an affidavit and swore that he knew Tran hid his money in the gas tank. Tran's affidavit clearly stated, "I was not aware of Quang Tran's savings which was more than $170,000 was in the truck." Inaccurate arguments notwithstanding, we turn to analysis of the pertinent statute and the elements it contains.
¶ 22. Pursuant to Section 97-23-101(1)(b)(ii)(1), a prima facie case of money laundering involves four elements. To sustain a conviction under Section 97-23-101(1)(b)(ii)(1), the State must prove, beyond a reasonable doubt, that: (1) Nguyen transported or attempted to transport money across the state border; (2) the money at issue represented proceeds of specified unlawful activity; (3) Nguyen knew that the money represented proceeds of specified unlawful activity; and (4) Nguyen knew that such transportation was designed to conceal or disguise the nature, location, source, ownership, or control of the money at issue. Miss.Code Ann. § 97-23-101(1)(b)(ii)(1)(Rev.2003).

*8 1. The "Transport" Element
¶ 23. First, we consider whether the State presented sufficient evidence that Nguyen "transport[ed], transmit[ted], or transfer[ed], or attempt[ed] to transport, transmit, or transfer a monetary instrument or funds from a place in the state to or through a place outside the state or to a place in the state from or through a place outside the state. . . ." Miss.Code Ann. § 97-23-101(1)(b)(Rev 2003).
¶ 24. The State presented evidence that Nguyen was a passenger in a pickup with a modified gas tank and that there was $170,000 secreted in that gas tank. There can be no doubt that $170,000 cash fits within the definition of a "monetary instrument" or "funds."
¶ 25. The record indicates that, along with the other two passengers in the pickup, Nguyen claimed that they left Charlotte, North Carolina and traveled through Brandon, Mississippi on their way to Texas. Thus, the State presented evidence that Nguyen was a passenger in a pickup that transported money from a place outside the state (Charlotte, North Carolina) to or through a place in the state (Brandon, Mississippi). Although Nguyen claimed he did not know the money was in the gas tank and did not know to whom the money belonged, the State was not bound to prove Nguyen was aware of the money under this element. Accordingly, we find that the State presented sufficient evidence to satisfy the "Transport" prong of Section 97-23-101(1)(b)(ii)(1).

2. The "Proceeds" Element
¶ 26. Next, we consider whether the State presented sufficient evidence that the $170,000 "represent[ed] the proceeds of some form of unlawful activity. . . ." Miss.Code Ann. § 97-23-101(1)(b)(ii).
¶ 27. Agent Davidson testified that he examined the modified gas tank, read the transcripts of the three defendants' statement, saw the photographs of the money that Deputy Penn seized, and examined the offense report. Agent Davidson concluded that the money derived from narcotics trafficking. Agent Davidson also testified that the manner in which the money was stored further suggested that the money derived from narcotics. Agent Davidson testified that narcotics traffickers frequently wrapped money in the fashion that the $170,000 was wrapped. Agent Davidson explained that, by wrapping the money in plastic wrap and tin foil, then vacuum sealing it, narcotics traffickers and couriers hope to disguise the scent of the money from any drug dog they encounter. As such, we find that the State presented sufficient evidence that the money derived from "some form of unlawful activity"  narcotics trafficking.

3. The First Scienter Element
¶ 28. Section 97-23-101(1)(b)(ii)(1) contains two scienter elements. The first scienter element requires that a defendant "[knew] that the monetary instrument or funds involved in the transportation represent[ed] the proceeds of some form of unlawful activity. . . ." Here, we are of the opinion that the record reveals no evidence that Nguyen knew the money was hidden in the gas tank or that he knew it represented proceeds of specified unlawful activity.
¶ 29. Since Nguyen denied having any knowledge that the money was secreted in the gas tank and was not caught in actual possession of the money or the truck in which it was discovered, the State was required to prove that Nguyen had constructive possession of the money. The Mississippi supreme court explained the theory of constructive possession in Curry *9 v. State, 249 So.2d 414 (Miss.1971). In Curry, the Supreme Court stated:
[T]here must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the [contraband] involved was subject due to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.
Id. at 416 (emphasis added).
¶ 30. In the present case, the evidence indicated that Nguyen's girlfriend purchased the truck two weeks before Nguyen, Tran, and Le left on their trip to Texas. Deputy Penn found the money hidden in a modified gas tank in that truck. While there is evidence that connects Nguyen to the truck, there is no evidence that Nguyen owned the truck. Moreover, there is no evidence that Nguyen knew that $170,000 was secreted in the false gas tank. By his affidavit, Nguyen stated that he was not aware of the money, had never seen it before, and did not know to whom it belonged. According to Tran's affidavit, Tran owned the money and he "did not tell the others of the money in [his] truck." While it may seem suspicious that Tran was able to somehow borrow Nguyen's girlfriend's truck and hide $170,000 in it, all without Nguyen's knowledge, that suspicion does not rise to the level of proof beyond a reasonable doubt that Nguyen knew the money in the gas tank represented proceeds from narcotics trafficking. It is possible that Nguyen lied when he said he did not know about the money. It is also possible that Tran lied when he said Nguyen did not know about the money. Still, those possibilities, alone, are insufficient proof that Nguyen knew that the money represented proceeds of some form of unlawful activity. Accordingly, we reverse Nguyen's conviction and render a judgment of acquittal. We consider the remaining issues as they apply to Tran.
II. THE EVIDENCE IS INSUFFICIENT TO PROVE THE GUILT OF QUANG THANH TRAN BEYOND A REASONABLE DOUBT.
¶ 31. Tran appeals the circuit court's decision to overrule his motion for judgment notwithstanding the verdict. Tran claims that the evidence was insufficient to prove his guilt beyond a reasonable doubt. Like Nguyen, Tran was convicted of money laundering, a violation of Section 97-23-101(1)(b)(ii)(1) of the Mississippi Code. We stated our standard of review in the issue above. For brevity's sake, we will not repeat it. It should suffice to say that we consider the sufficiency of the evidence. Without laboring over Section 97-23-101(1)(b)(ii)(1), already discussed above, we proceed.

1. and 2. The Transport Element and the Proceeds Element
¶ 32. We found sufficient evidence to sustain the State's proof on these prongs in Issue I. above. The State's proof of these two elements was the same for Tran as it was for Nguyen. Accordingly, we again find that the State presented sufficient evidence of the first two prongs of Section 97-23-101(1)(b)(ii)(1) as they apply to Tran.

3. The First Scienter Element
¶ 33. In Issue I. above, we found that the State presented insufficient evidence that Nguyen knew the money represented proceeds of specified unlawful activity. In U.S. v. Carr, 25 F.3d 1194 (3d Cir.1994), the Third Circuit Court of Appeals considered whether the federal government presented *10 sufficient evidence to sustain a conviction for attempted money laundering under 18 U.S.C. § 1956(a)(2)(B)(i)  the federal counterpart to XX-XX-XXX(1)(b)(ii)(1). In considering whether the government presented sufficient evidence to sustain its burden of proof under the first scienter element, Carr found sufficient evidence where: (a) the jury heard testimony that the defendant took numerous trips to the Cayman Islands and Colombia just after cash exchanges between a co-conspirator and a cooperative government witness; (b) the defendant admitted to knowing and frequently traveling with the ringleader of the money laundering conspiracy; (c) the jury heard testimony about an occasion when the defendant lied to passport officials in order to obtain a new passport which would not contain numerous stamps showing visits of short duration to Colombia; (d) evidence showed that the defendant lied to Customs officials about how he obtained a blue bag that contained $180,000 in $100 bills;[1] (e) taped phone conversations both before and after the defendant was caught with the money indicated that the defendant knew the money he was carrying had been derived from illegal transactions; and (f) positive alerts by drug sniffing dogs indicated that much of the money was likely used in drug transactions. Id. at 1206-07.
¶ 34. Here, there is much less evidence than in Carr. Still, the jury could reasonably conclude that Tran initially denied ownership of the money because he knew it represented the proceeds of narcotics trafficking. Agent Davidson testified regarding common methods of wrapping money exchanged in narcotics transactions and the purpose of wrapping it as such  to minimize the scent of the money and increase the likelihood of evading capture.
¶ 35. The defendant in United States v. Gallo, 927 F.2d 815 (5th Cir.1991) was arrested while transporting $299,985 in his car. To prove that the defendant in Gallo knew the money represented proceeds of narcotics trafficking, the Government introduced the following evidence: (a) the defendant received a box of money from a suspected narcotics trafficker who had been under DEA surveillance for several months; (b) the suspected narcotics trafficker transferred the box of money shortly after he made a call from a public phone, a common method drug dealers use to set up meetings; (c) the box in the defendant's car contained money wrapped in foil; (d) on the foil packets, the DEA found fingerprints of another known drug dealer under DEA surveillance; (e) after the defendant was arrested, he made two false exculpatory statements about the car and the box of money; (f) on the same day that the suspected narcotics trafficker gave the defendant the box of money, the suspected narcotics trafficker gave $300,000 that was wrapped in foil and placed in a cardboard box to the known drug dealer  in exchange for 25 kilograms of cocaine; (g) the transfer between the suspected narcotics trafficker and the known drug dealer was very similar to the transfer between the suspected narcotics trafficker and the defendant; (h) the DEA searched the known drug dealer's house and found $1.2 million and a money counting machine; and (i) the DEA searched the suspected narcotics trafficker's house and found fifty kilograms of cocaine. Id. at 822. The Gallo court held that, based *11 on the concerted action among the defendants, the suspected narcotics trafficker, and the known drug dealer, combined with the defendant's false exculpatory statements, the jury could reasonably infer that the defendant knew he was transporting proceeds of unlawful activity. Id.
¶ 36. Like Nguyen, Tran denied knowledge of the triple-wrapped money hidden in the false gas tank. However, Tran recanted his initial denial and later filed a sworn affidavit incident to the forfeiture proceeding. In his sworn affidavit, Tran claimed the money represented his life savings. Tran lied at least once. Either he lied when he said the money did not belong to him, or he lied when he said it did. The jury could have found that Tran told Deputy Penn that the money did not belong to him because he did not want to be connected to it. That is, Tran's initial denial could have been for exculpatory reasons. The State presented evidence that the money Tran claimed represented his life savings was wrapped in a manner common to methods used in narcotics trafficking. True enough, Tran did not confess by testifying that the triple-wrapped and concealed money was, in fact, the fruits of some unlawful activity. However, we are not called upon to weigh the evidence in this case. Rather, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Bush, 895 So.2d at (¶ 16). Viewing the evidence in the light most favorable to the prosecution, the jury heard evidence that (a) Tran drove a truck from North Carolina to Houston, Texas for the purpose of a shopping trip, (b) the truck was not owned by any of its occupants, (c) the truck had an auxiliary gas tank, (d) the auxiliary gas tank had been electronically and physically disconnected and altered into a secret storage compartment, (e) Tran admitted in his affidavit that he stored over $170,000 in a false gas tank, (f) Tran admitted that the money was his, (g) the money was wrapped up and plastic and sealed, (h) Deputy Penn testified that Tran initially denied ownership of the money, and (i) Agent Davidson testified that, in his expert opinion, the money was wrapped in a manner intended to disguise the scent of the money from drug dogs. The jury was called upon to review the conflicting testimony. They were instructed by the circuit court to use their good common sense and sound honest judgment in evaluating the evidence. The jury heard evidence that could lead a rational trier of fact to find sufficient proof of the essential elements of the crime beyond a reasonable doubt. The combination of Tran's inconsistent sworn statements, the manner in which the money was wrapped, and the fact that Tran stored what he claimed was his life savings in the gas tank of a pickup amount to sufficient evidence to sustain Tran's conviction for money laundering.

4. The Concealment Scienter Element
¶ 37. The final element under Section 97-23-101(1)(b)(ii)(1) is whether the State presented sufficient evidence that Tran knew that his transportation of the money was designed to conceal or disguise the nature, location, source, or control of the proceeds of narcotics trafficking.
¶ 38. Carr found sufficient evidence for a rational jury to find a defendant guilty where (a) the government presented evidence that the defendant received a blue carry-on bag at an airport from someone; (b) when asked to declare all monetary instruments over $10,000, the defendant stated that he had $4,000 in cash; (c) a subsequent consensual search of the defendant's blue bag revealed $180,000 in cash secreted in two coffee thermos mugs and a *12 talcum powder container; (d) the defendant was carrying $6,000 in $100 bills on his person; (e) when asked about how he came to possess the bag, the defendant told customs officials a highly suspicious, if not incredible story that he had received an anonymous phone call during which he was told to retrieve the bag from a train station locker and to transport it to Colombia. Carr, 25 F.3d at 1206. According to Carr, by returning a guilty verdict on this count, the jury resolved a credibility issue in favor of the government. Id.
¶ 39. In United States v. Gonzalez-Rodriguez, 966 F.2d 918 (5th Cir.1992), the fifth circuit court of appeals held that the government presented insufficient evidence to sustain a money laundering conviction under slightly different statutory language. Subtle statutory variation notwithstanding, Gonzalez-Rodriguez found insufficient evidence of the defendant's design to conceal the nature, location, source, ownership, or control of criminal proceeds where: (a) the government did not introduce any evidence of the defendant's travel itinerary; (b) the defendant voluntarily cooperated with law enforcement officers when they asked about the cash in her possession; and (c) the defendant did not make any false exculpatory statements to the law enforcement officers. Id. at 925.
¶ 40. The record before us reveals that the jury could have inferred concealment. Tran had an overall plan or design to move what Agent Davidson testified to be proceeds of narcotics sales from North Carolina through Mississippi. Assuming Tran put his life savings in a false gas tank with the intent to transport them to Houston, Texas, that act is clearly designed to facilitate undetected transportation of the cash. Further, Agent Davidson testified that the money was wrapped in a manner designed to disguise the scent of money from drug-sniffing dogs. So, we can conclude that Tran, the admitted owner of the money, wrapped the money to disguise its scent and stowed the money in a false gas tank to disguise it from sight. Additionally, Tran gave an inconsistent statement when he told Deputy Penn that the money did not belong to him. While it defies logic for one to refuse to acknowledge ownership of one's life savings, only to attempt to reclaim it at a later date, that act arguably concealed Tran's ownership of the money, and thereby concealed the source of the money.
¶ 41. The plan in which Tran participated effectively removed the funds from someone's hands and concealed someone's ownership and control of the funds. The movement of these funds to Texas, as a part of the cycle of the drug trade, was necessary because narcotics traffickers cannot actually go to a bank, deposit proceeds from narcotics trafficking, and pay a supplier. Thus, the concealed movement of the funds was an integral part of the business of the drug enterprise. Additionally, Tran's method of carrying out his mission included hiding or concealing the funds in the gas tank and packaging the money to conceal it from drug dogs. Accordingly, we affirm.
III. THE INDICTMENT IS CONSTITUTIONALLY INSUFFICIENT UNDER THE STATE AND FEDERAL CONSTITUTIONS.
¶ 42. Tran claims that the indictment was insufficient because it merely recited Section 97-23-101 and did not provide any essential facts that alleged a violation of that statute. Tran also claims that the indictment failed to provide sufficient notice of the charge against him. Specifically, Tran points to the term "specified unlawful activity." Tran claims that this language, without more, is too vague to provide notice of the charge against *13 him. Tran acknowledges that "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." Hamling v. U.S., 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). However, Tran notes that "[w]here guilt depends so crucially upon such a specific identification of fact . . . an indictment must do more than simply repeat the language of the criminal statute." Russell v. U.S., 369 U.S. 749, 764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Accordingly, Tran claims that the Mississippi money laundering statute, Miss.Code Ann. § 97-23-101, includes language that is insufficiently vague and generic to merely parrot the language of the statute.
¶ 43. In general an indictment is sufficient if it tracks the language of the relevant criminal statute. Calhoun v. State, 881 So.2d 308, 311 (Miss.Ct.App. 2004). Here, "specified unlawful activity" includes any felony under state or federal law. Miss.Code Ann. § 97-23-101(1)(a). The Fifth Circuit Court of Appeals has considered similar arguments. In resolving such a contention, the Fifth Circuit held:
This argument misinterprets the term, "specified unlawful activity." This term does not imply that the indictment must list a specific unlawful act that is the source of the money. Instead, the statute proposes "specified unlawful activity" as a term of art. A specified unlawful activity is one of a set of federal crimes listed in 18 U.S.C.A. § 1956(c)(7). Section 1957 merely requires money to be derived from a particular set of federal crimes. It does not require the indictment to specify which unlawful activity generated the funds in question. In any case, we note that the money laundering counts of the indictment included allegations sufficient to (1) enumerate each element of the offense; (2) provide Appellants with notice of the precise transactions for which they were being prosecuted; and (3) prevent future prosecutions for the same offense. Thus, the indictment was sufficient.
U.S. v. Loe, 248 F.3d 449, 468 (5th Cir. 2001) (footnotes omitted).
¶ 44. We find the language in Loe persuasive and pertinent to Tran's present argument. We do not disagree with the dissent regarding the definition of "specified unlawful activity." We do respectfully disagree, however, over whether the specific unlawful activity is a necessary portion of the indictment. While the dissent is correct in that the language of 18 U.S.C.A. § 1957 is not identical to the language of Section 97-23-101(1)(a), the distinction is minimal. The federal statute lists "specified unlawful activity" as one of a set of federal crimes listed in another federal statute. Our Mississippi counterpart states that "specified unlawful activity" includes any felony under state or federal law. What is more, the indictment against Tran enumerated each element of the offense. Additionally, the indictment provided Tran with notice that he was being prosecuted incident to his transportation of $170,000 through Brandon, Mississippi. Accordingly, we find no error and affirm.
IV. THE COURT ERRED IN DENYING APPELLANTS' MOTIONS TO SUPPRESS THE EVIDENCE.
¶ 45. Tran filed a pretrial motion to suppress the evidence that resulted from Deputy Penn's initial traffic stop. Tran claimed that Deputy Penn had insufficient probable cause or reasonable suspicion to *14 stop him. The circuit court concluded that the traffic stop was valid and that Deputy Penn's search was a valid consent search.
¶ 46. Aggrieved, Tran and Nguyen repeat their argument that Deputy Penn lacked probable cause and had no basis to form a reasonable suspicion that Tran violated a traffic ordinance. Tran argues that, since Deputy Penn's initial stop was unreasonable, Deputy Penn's subsequent search and the fruits of that search should have been suppressed.
¶ 47. The State submits that Deputy Penn was justified when he stopped Tran. The State also cites Blake v. State, 825 So.2d 707 (Miss.Ct.App.2002) and Doolie v. State, 856 So.2d 669 (Miss.Ct.App.2003) to support its assertion that "crossing a fog line" is a reasonable basis for a stop. In Blake and Doolie, this Court affirmed convictions for driving under the influence. In each case, "crossing the fog line" was the basis for the initial stop. However, whether that was a reasonable basis for a stop was never discussed in either Blake or Doolie.
¶ 48. "A law enforcement officer has the authority to stop a motorist if the officer has probable cause to believe that the person is committing a traffic offense." Burnett v. State, 876 So.2d 409(¶ 6) (Miss. Ct.App.2003) (citing Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89,(1996)). Moreover, "failure to have regard for the width and use of the street by swerving off the side of the road or crossing the marker lines constitutes probable cause for a traffic stop." Henderson v. State, 878 So.2d 246(¶ 8) (Miss.Ct.App.2004). According to precedent, Deputy Penn had a reasonable basis to stop Tran.
¶ 49. The dissent is of the opinion that Deputy Penn's search of the gas tank exceeded the scope of Tran's consent. Although that issue is not the subject of any of Tran's assignments of error, we concede that such a search could exceed the scope of consent given the circumstances and the presence of evidence among the record indicative of withdrawn consent. Neither Tran, Nguyen, or Le testified. The only evidence adduced at trial came from Deputy Penn. Deputy Penn testified that the defendants consented to the search of the truck and consented to following him to the shop so that the truck could be more thoroughly searched. Moreover, after all occupants denied knowledge of the money, all were released and Tran received a traffic citation for careless driving. Here, there is no evidence in the record that Tran or any other passenger withdrew their consent to search the gas tank or otherwise objected to Deputy Penn's subsequent search of the gas tank. As such, we find no error in the circuit court's decision to deny Tran's motion to suppress.
V. THE TRIAL COURT ERRED IN NOT SUPPRESSING THE EVIDENCE OF THE MONEY BECAUSE THE STATE LACKED PROBABLE CAUSE FOR ITS SEIZURE.
¶ 50. In this issue, Tran claims that Deputy Penn should not have seized the money because there was no evidence that it had been involved in an illegal transaction. Tran notes that there were no traces of drugs found on the money, in the truck, or on any of the defendants. Tran adds that there were no reports from other law enforcement agencies relevant to the defendants, nor was there any information on any of the defendants in the DEA database.
¶ 51. While all of the above is true, Tran omits certain relevant facts. Neither he nor his passengers claimed ownership *15 of the $170,000 when Deputy Penn found it stowed in a secret compartment of a false gas tank. Tran cites no authority stating that a law enforcement agency may not seize unclaimed money packaged in a fashion common among narcotics traffickers. This issue is without merit.
VI. THE COURT COMMITTED PLAIN ERROR AND/OR COUNSEL WAS INEFFECTIVE IN ALLOWING THE ADMISSION OF THE TESTIMONY OF AGENT LARRY DAVIDSON THAT THE MONEY IN QUESTION WAS THE PRODUCT OF ILLEGAL DRUG TRAFFICKING.
¶ 52. Here, Tran argues that the trial judge erred when he allowed Agent Davidson to testify as an expert witness. The standard of review regarding the admission or exclusion of evidence is abuse of discretion. Burton v. State, 875 So.2d 1120(¶ 6) (Miss.Ct.App.2004). Abuse of discretion will only be found where a defendant shows clear prejudice resulting from an undue lack of constraint on the prosecution or undue constraint on the defense. Id. This Court shall not disturb a trial court's decision unless it is clearly wrong. Id.
¶ 53. The State tendered Agent Davidson as an expert witness in the field of "[d]rug trafficking and proceeds from drug trafficking." Counsel for Tran did not object. As such, Tran failed to make a contemporaneous objection. "It is elementary that, for preservation of error for review, there must be contemporaneous objections." Christmas v. State, 700 So.2d 262, 271 (Miss.1997). Tran acknowledges that he is barred from raising this issue for the first time on appeal.
¶ 54. Nevertheless, Tran claims that the trial judge committed plain error when he allowed Agent Davidson to testify as an expert witness. Plain error is an error that affects a defendant's substantive rights. Dobbins v. State, 766 So.2d 29(¶ 5) (Miss.Ct.App.2001). Tran makes the bare and conclusory argument that admission of Agent Davidson's testimony "affected substantial rights of the defendants." Further, Tran argues that "this Court should find plain error and reverse because [Agent Davidson's expert testimony] denied Appellants their rights to confrontation and cross-examination, due process, and a fair trial under both the state and federal constitutions." However, Tran fails to indicate just how Agent Davidson's expert testimony infringed upon those rights. We decline to extend plain error under the circumstances.
¶ 55. As for Tran's ineffective assistance of counsel claim, we find that allegation to be premature. When a party raises an ineffective assistance of counsel claim on direct appeal, the proper resolution is to deny relief without prejudice to the defendant's right to assert the same claim in a post-conviction relief proceeding. Pittman v. State, 836 So.2d 779(¶ 38) (Miss.Ct.App.2002). "We should reach the merits on an ineffective assistance of counsel issue on direct appeal only if `(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.'" Id. at (¶ 39) (quoting Colenburg v. State, 735 So.2d 1099, 1101 (Miss.Ct.App.1999)). If we do not consider the issue due to the state of the record, assuming we affirm the conviction, Tran may raise his ineffective assistance of counsel claim in post-conviction relief proceeding. Id.
¶ 56. The parties have not entered any such stipulation, and the record does not *16 affirmatively show ineffectiveness of constitutional dimensions. Accordingly, Tran may raise his ineffective assistance of counsel claim in a post-conviction relief proceeding.
¶ 57. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF QUANG THANH TRAN OF MONEY LAUNDERING AND SENTENCE TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF TRAN'S APPEAL ARE ASSESSED TO THE APPELLANT. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF JOHNSON QUOC NGUYEN OF MONEY LAUNDERING AND SENTENCE TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS REVERSED AND RENDERED. ALL COSTS OF NGUYEN'S APPEAL ARE ASSESSED TO RANKIN COUNTY.
MYERS, P.J., SOUTHWICK, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. KING, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, P.J. AND IRVING, J.
KING, C.J., Dissenting.
¶ 58. I agree with the majority in its resolution of Cause Number 2004-KA-00369, Nguyen v. State. However I believe that the majority errors in its resolution of Cause Number 2004-KA-00368, Tran v. State, and therefore respectfully dissent.
¶ 59. Contrary to the majority's holding, I am of the belief that (1) the evidence was insufficient to find beyond a reasonable doubt that Tran was guilty of money laundering, (2) the indictment was fatally defective and (3) the search and resulting seizure of the money was improper.
¶ 60. Tran was indicted for money laundering under Section 97-23-101 of the Mississippi Code. The specific portion of the Code under which Tran was charged provides:
(1)(b) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the state to or through a place outside the state to a place in the state from or through a place outside the state;
(ii) Knowing that the monetary instrument or funds involved in the transportation represent the proceeds of some form of unlawful activity and knowing that such transportation is designed in whole or in part:
(1.) To conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;
¶ 61. The evidence offered by the State to prove Tran's guilt consisted of the testimony of two witnesses, Officer Shannon Penn, who made the traffic stop, and Drug Agent Larry Davidson. The core of Officer Penn's testimony is found in the following exchange elicited during cross examination:
Q. If you could tell me essentially what it says that you are charging these defendants with?
A. Smuggling.
Q. Is there a statute in the state of Mississippi for smuggling?
A. Sir, I don't know if there is or not.
Q. So what were they smuggling?
A. Money.
Q. Is it against the law to have money in your pocket?
A. No, sir, not in your pocket.

*17 Q. Is there a statute that says it's against the law to keep it in your sun visor, on top, in your sun visor?
A. No, sir.
Q. So how could they be smuggling money?
A. They had it in a gas tank. They had it wrapped to keep a dog from smelling it, to have it hard to find so they could get it from one state to the other without police officers finding it.
Q. But that's not against the law.
¶ 62. Drug Agent Davidson's sole contribution to the case was to testify that in his expert opinion, the money seized was derived from drug trafficking. The core of Drug Agent Davidson's testimony is found in the following exchanges elicited during cross examination:
Q. The term knowing that the property involved in a financial transaction represents proceeds from some drug activity, explain to me how you arrived at that?
A. Quite simply. Narcotics goes, let's say for example, North Carolina, could be coke, could be marijuana. Let's say it's only five kilos of coke. It gets to North Carolina, they open it up. It's 98 percent pure. You can't take 98 percent pure coke. So what you do is you take a cutting agent, and you turn that one kilo of coke into five. So now, instead of your 14 thousand-dollar wholesale cocaine, now you have a 50 thousand-dollar wholesale thing.
And you start selling it off to people in five dollars, ten dollars, 20 dollars, hundred-dollar amounts. If you got a very good client, maybe thousand-dollar amounts; a very, very good client, maybe ten thousand, maybe whole kilos at a time. That cocaine has to get there, it has to be sold. And when you sell it, you come up with cash. And when you come up with cash, that cash has to get back to the people that provided that narcotics.
Q. But you have no direct evidence in this case that happened?
A. If you're asking me if I was in North Carolina and saw something sold, then no.
* * * * *
Q. But you know that the term conducts, but you have no real evidence that a transaction took place. Like you said, Hosea gave, you have no evidence of a transaction?
A. That is correct. I wasn't witnessing or surveilling a transaction between your clients and anybody, no.
Q. Right. The only financial transaction, you didn't witness any financial transaction like quid pro quo, here's the drugs, here's the money?
A. No, sir, I did not.
Q And all the stuff that you reviewed, you didn't see anything like?
A. No, I didn't see any surveillance reports from other officers in North Carolina or any of that, no.
Q. Those people were not tagged or followed from North Carolina by other FBI agents? For your information, they don't even have a felony arrest?
Q. Special Agent Davidson, I meant there are no convictions of any felonies of my clients. Were you aware of that?
A. I'm aware of that, yes, looking at their NCIC records, no convictions.
Q. Does that play any part in your opinion?
A. No, sir, not at all.
* * * *
Q. And you opinion is that it derived from some type of unlawful activity?
A. No, no, sir.
Q. Proceeds at some point?
A. I didn't say some type of illegal activity. I said proceeds of narcotics trafficking.

*18 Q. Although you have no direct evidence yourself and none of your agents were following them or knew anything about this?
A. None of my agents were following, no, sir.
Q. Let me ask you, the HIDTA group is a big group because I know they have different places throughout the state and throughout the country. That there was nothing in the HIDTA group that related to any of my clients. Did you investigate them?
A. I did.
Q. What did you find?
A. I found in the DEA data bases, no intelligence on your clients.
¶ 63. The majority cites the cases of United States v. Gallo, 927 F.2d 815 (5th Cir.1991) and U.S. v. Carr, 25 F.3d 1194 (3rd Cir.1994), to say that the evidence was sufficient to find Tran guilty beyond a reasonable doubt of money laundering. However the facts in these cases are unlike the facts in Tran. In the cases cited by the majority, the evidence showed a direct connection between the defendants, and persons known by law enforcement to be involved with drug trafficking. Speculation and guesswork by the majority notwithstanding, there is no such connection in this case. Likewise, absent proof of some direct connection, there is no proof that the actions of Tran were taken knowing the money represented the fruits of unlawful activity.
¶ 64. The indictment in this case was insufficient in that it failed to include a required element. The relevant portion of the indictment reads: "Quang Thanh Tran on or about the 10th day of December, 2002, in the county aforesaid and within the jurisdiction of this Court, did willfully, unlawfully and feloniously transports or attempts to transport a monetary instrument or funds from a place in the state to or through a place outside the state or to a place in the state from or through a place outside the state knowing that the monetary instrument or funds involved in the transportation represent proceeds of some unlawful activity and knowing that such transportation was designed to conceal or disguise the nature, location, the source, the ownership or the control of the proceeds. . . ."
¶ 65. Mississippi Code Section 97-23-101(1)(b)(ii)(1) provides that:
(b) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the state to or through a place outside the state to a place in the state from or through a place outside the state;
(ii) Knowing that the monetary instrument or funds involved in the transportation represent the proceeds of some form of unlawful activity and knowing that such transportation is designed in whole or in part:
1. To conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;
¶ 66. Contrary to the clear language of the relevant statute, the indictment failed to indicate the "specified unlawful activity" from which the funds were derived.
¶ 67. The majority finds that the indictment was sufficient. It reaches this conclusion by relying upon the case of U.S. v. Loe, 248 F.3d 449 (5th Cir.2001), which decided a similar issue under Title 18 U.S.C.A. § 1956, which makes money laundering a crime under federal law. However, I would note that there is a major distinction between the state and federal statutes. That distinction is the statutory definition of "specified unlawful activity" is found in Title 18 U.S.C.A. § 1956(c)(7).
A specified unlawful activity is one of a set of federal crimes listed in 18 U.S.C.A. § 1956(c)(7). Section 1957 *19 merely requires money to be derived from a particular set of federal crimes. It does not require the indictment to specify which unlawful activity generated the funds in question. In any case, we note that the money laundering counts of the indictment included allegations sufficient to (1) enumerate each element of the offense; (2) provide Appellants with notice of the precise transaction for which they were being prosecuted; and (3) prevent future prosecution for the same offense.
Loe, 248 F.3d at 468.
¶ 68. The phrase "specified unlawful activity" appears consistently throughout XX-XX-XXX. Unless a definition is supplied, or the context in which the term is used indicates otherwise, words and phrases are to be accorded their ordinary meaning. The state statute contains no definition of the term, and contrary to the Fifth Circuit's position, there is nothing to suggest that the words "specified unlawful activity" should not be accorded an ordinary interpretation.
¶ 69. The root word "specific", as defined in the Third edition of the American Heritage Dictionary, means explicitly set forth, or definitive. There is no definitive or explicitly set forth unlawful activity in the indictment. I would therefore find it to be defective.
¶ 70. I would also hold the search and seizure of the truck to be improper. Officer Penn received permission to search the truck on the side of the road. There is no rational interpretation of that permission which would, under those circumstances give to him the right to disassemble the truck. When Officer Penn asked for permission to search the truck, it was to look at the gas tank. This is evident from the following testimony elicited during direct examination:
Q. What do you feel like you needed to do at that point?
A. I asked the person driving for permission to search the truck. He then gave me a verbal consent to search the truck. After he gave me the verbal consent, I then started the search of the pickup.
Q. During your search, what part of the truck aroused some interest to you?
A. On the model pickup they were driving, the gas tanks on it are the first place that I really wanted to have a look on it.
Q. Did you see anything on the gas tank that led you to believe that this gas tank had recently been removed?
A. On the back gas tank of this model pickup had been removed.
Q. You were able to view that? What physically did you see on the gas tank that led you to make that conclusion, Officer Penn?
A. The nuts and bolts on the tank you could tell had been recently been removed because they were shiny and there was no rust. The bands that hold the tank into place, you could tell they had been removed because of the marks on the tank.
Q. Did that lead you to believe that there might be contraband in that gas tank?
A. Yes, sir.
¶ 71. When Penn saw the gas tank, he determined at that point that he would remove it from the truck In an effort to place Officer Penn's conduct in the best light, the above testimony is followed by this exchange between the prosecutor and Penn.
Q. Were the defendants asked to follow you to the sheriff's department?
A. Yes, sir.
Q. That would have been what part of the sheriff's department?
A. Sheriff's department shop.
Q. Did they agree to do so?
A. Yes, sir.
*20 ¶ 72. When Officer Penn directed the defendants to come to the sheriff's department shop so that he could conduct a thorough search, it was a command performance, and they were for all practical purposes under arrest. As such, any search done at the shop would have required a new request to conduct a search, or a warrant authorizing the same, or it must have been incident to a lawful arrest. Because none of these things occurred, the seizure and search were improper.
¶ 73. I would therefore reverse and render this conviction as well.
LEE, P.J., AND IRVING, J., JOIN THIS OPINION.
NOTES
[1] "Lying to law enforcement officers might provide insufficient evidence of guilt standing alone, but in conjunction with other evidence, lying provides an allowable inference of guilt to sustain a conviction in a sufficiency of evidence challenge." Carr, 25 F.3d 1194 (citations omitted).