**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2004-CT-00346-SCT**

*W. A. COLEMAN*

*v.*

*STATE OF MISSISSIPPI*

**ON WRIT OF CERTIORARI**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/02/2004 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID M. HOLLY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | JOYCE IVY CHILES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY IS REVERSED AND RENDERED - 12/07/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1. Without authorization, a deacon of Pillow Chapel Missionary Baptist Church ("Pillow Chapel") in Greenwood, wrote church checks to himself. He was indicted, tried, and convicted under Mississippi's embezzlement statute, Miss. Code Ann. Section 97-23-19 (Rev. 2004) ("Embezzlement Statute"). The question presented is whether the deacon was indicted and tried under the correct statute.

**BACKGROUND FACTS AND PROCEEDINGS**

¶2.     W. A. Coleman and James Brown, the two deacons at Pillow Chapel, were responsible for collecting monthly offerings from church members, depositing the funds into the church's bank account, and paying for authorized maintenance and repairs to the church building and facilities.

¶3.     Between January and July 2001, Coleman wrote checks[1] totaling approximately $1,600.00 to himself, with no documentation of the purpose for the expenditures. When Brown became aware of Coleman's conduct, he notified law enforcement officials, and an investigation ensued. Coleman was indicted under the Embezzlement Statute. The indictment stated:

> That W.A. Coleman, that [sic] between the 22nd day of January, 2001 and 8th day of July, 2001, in Leflore County, Mississippi, being a deacon and in a position of trust at Pillow Chapel M.B. Church, and by virtue of his position as deacon, he, the said W.A. Coleman, he had in and under his care money, an amount being Two Hundred and Fifty Dollars ($250.00) or more, and did fraudulently and feloniously embezzle and convert said money to his own use, without the consent of James Brown, Trustee, and Pillow Chapel, M.B. Church, against the peace and dignity of the State of Mississippi.

¶4.     In January 2004, the case proceeded to trial. The essence of Coleman's defense was that he had written those checks to compensate himself for payments he made from his own funds for repair of church property, including plumbing and electrical work, as well as maintenance of the church's lawn mower. The church's pastor, however, testified that before any authorized work could be done for the church, the deacons were required to obtain

---

[1] Both Brown and Coleman were authorized to sign checks individually, without the safeguard of requiring two signatories. They were not, however, authorized to make expenditures without the approval of the members, which was determined at meetings held after their once a month church services.

approval from the congregation. The pastor also testified that the plumbing work which had been done was minor, there had been no electrical work done at the church, and the repairs performed were not worth $1,600.00.

¶5. At the completion of the State's case in chief, Coleman moved for a directed verdict on the basis that the State had failed to prove the money had been embezzled from either an "incorporated company" or a "private person" as required by the Embezzlement Statute, under which he was indicted. Coleman also argued the State had failed to prove any misappropriation for personal use.

¶6. The trial court denied Coleman's motion, and the trial proceeded. Coleman did not testify, but he called various witnesses to testify concerning the alleged work and repairs. The jury found Coleman guilty, and he was sentenced to a ten-year term of incarceration and ordered to pay restitution in the amount of $2,255.00. The trial court denied Coleman's motion for a new trial or, in the alternative, for J.N.O.V., and he timely perfected an appeal, which we referred to the Court of Appeals.

¶7. Although Coleman briefed a variety of issues, the Court of Appeals addressed only the trial court's denial of his motion for a directed verdict, holding that the State did not carry its burden of demonstrating that Coleman embezzled from an incorporated company or a private person, as required by the Embezzlement Statute. In reversing and rendering Coleman's conviction, the Court of Appeals noted that Pillow Chapel was unincorporated, and insufficient evidence existed to prove that Coleman had embezzled from any private person. *Coleman v. State*, No. 2004-KA-00346-COA, 2005 Miss. App. LEXIS 795, at *11 (Miss. Ct. App. Nov. 1, 2005).

3

¶8.     The State applied to this Court for a writ of certiorari, and we granted that petition. Now, after careful review of the entire record, the briefs, and the arguments presented, we find the decision of the Court of Appeals was correct, and accordingly, we affirm the judgment of the Court of Appeals and reverse Coleman's conviction.

**DISCUSSION**

**I.**

¶9.     The interpretation of a statute presents a question of law which we are required to review de novo. *Sykes v. State*, 757 So. 2d 997, 999 (Miss. 2000). We begin our review by recognizing that this Court's constitutional responsibility is not to determine whether Coleman committed a criminal act by violating some statute, but rather to determine whether his conduct, as proven to the jury, constituted a violation of the particular statute under which he was indicted. The State chose to seek an indictment under the Embezzlement Statute, which provides:

> If any director, agent, clerk, servant, or officer of any incorporated company, or if any trustee or factor, carrier or bailee, or any clerk, agent or servant of any private person, shall embezzle or fraudulently secrete, conceal, or convert to his own use, or make way with, or secrete with intent to embezzle or convert to his own use, any goods, rights in action, money, or other valuable security, effects, or property of any kind or description which shall have come or been intrusted to his care or possession by virtue of his office, place, or employment, either in mass or otherwise, with a value of Five Hundred Dollars ($500.00) or more, he shall be guilty of felony embezzlement, and, upon conviction thereof, shall be imprisoned in the Penitentiary not more than ten (10) years, or fined not more than Ten Thousand Dollars ($10,000.00), or both.

Miss. Code Ann. § 97-23-19 (Rev. 2004).

¶10.    It is bedrock law in Mississippi that criminal statutes are to be strictly construed against the State and liberally in favor of the accused. *McLamb v. State*, 456 So. 2d 743, 745

4

(Miss. 1984). When the words of a statute are plain and unambiguous there is no room for interpretation or construction, and we apply the statute according to the meaning of those words. *Harrison v. State*, 800 So. 2d 1134, 1137 (Miss. 2001). It is only when a statute is unclear or ambiguous that we look beyond the language of the statute to determine its meaning. *Id.* (citing *Kerr-McGee Chem. Corp. v. Buelow*, 670 So. 2d 12, 17 (Miss. 1995); *Allred v. Webb*, 641 So. 2d 1218, 1222 (Miss. 1994); *Clark v. State ex rel. Miss. State Med. Ass'n*, 381 So. 2d 1046, 1048 (Miss. 1980)). In *State v. Traylor*, 100 Miss. 544, 558-59, 56 So. 521, 523 (1911), this Court outlined our duty when statutes are presented for judicial interpretation: "The court has no right to add anything to or take anything from a statute, where the meaning of the statute is clear. . . . The law is that criminal statutes must be strictly construed. Such has been the law from time immemorial."

¶11.    Furthermore, this Court has held that "the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under circumstances that every element of the offense existed . . . .'" *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005) (quoting *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)). In reviewing the denial of a motion for directed verdict, if we determine the evidence points in favor of the defendant on any element of the offense such that a reasonable juror could not have found the defendant guilty beyond a reasonable doubt, we must reverse the conviction. *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985).

**II.**

<em>Miss. Code Ann. Section 97-23-19</em>

¶12.     This Court does not get to decide what are the necessary or appropriate elements for the commission of a particular crime.  The Mississippi Constitution grants that arduous responsibility to the Legislature which long ago[2] determined that there should be a crime in Mississippi called embezzlement.  The Embezzlement Statute, in a most specific, particular, and unambiguous manner, describes those who may be convicted under that statute for embezzlement.  It follows that those not included on that list may not be convicted thereunder.  The list is limited to certain persons who steal from "any incorporated company," and certain persons[3] who steal from "any private person."  Stated another way, the statute clearly provides only two categories of potential victims against whom the crime of embezzlement may be committed: *either* (1) "any director, agent, clerk, servant, or officer *of any incorporated company*," *or* (2) "any trustee or factor, carrier or bailee, or any clerk, agent or servant *of any private person* . . . ."  Miss. Code Ann. § 97-23-19 (emphasis added).

¶13.     Thus, the potential victims under the statute are "any incorporated company," and "any private person," and part of the State's burden of proof is to demonstrate that the defendant committed the wrongful act against one of those two potential victims.  That being so, we must then determine whether Pillow Chapel was either an incorporated company or a private person when Coleman took the money.  Because it is undisputed in this case that

---

[2] The substantive language of the statute has remained unamended since our first code was published in 1848.

[3] Those who may be prosecuted for embezzling from a "private person" are trustees, factors, carriers, bailees, clerks, agents, and servants.  Miss. Code Ann. § 97-23-19.

6

Pillow Chapel was not incorporated, we turn to the question of whether it was a "private person," as that terminology was understood when the Legislature employed it in 1848.

**III.**

*Private person*

¶14.    One might, at first blush, think that the "common and ordinary acceptation and meaning"[4] of "private person" is uncomplicated and easily understood. However, some have argued that because Pillow Chapel is an entity made up of private persons, the entity itself is also a private person. Others posit that since an organization such as a religious society (or a church) is an "artificial person" under the law, it should be treated as a "private person" under the statute. We reject these arguments because to so hold would require that we recognize virtually every entity, organization, and "artificial person" as a private person. If these were valid arguments, it would necessarily follow that incorporated companies would also be private persons, since they are "artificial persons" made up of stockholders, who are private persons. This, of course, begs the question of why the Legislature would provide separate categories within the same statute for an "incorporated company" and a "private person." Stated more simply, it is illogical to conclude that the Legislature would provide – within the same statute – that an agent or clerk of an incorporated company, *or* an agent or clerk of a private person, may be charged under the statute. Clearly, the language of the statute may not fairly be interpreted to apply the term "private person" to all "artificial persons" and organizations made up of private persons.

---

[4] See Miss. Code Ann. Section 1-3-65 (Rev. 2004) on the construction of statutory terms.

7

¶15. Earlier this year we decided ***Champluvier v. State***, No. 2003-CT-02581-SCT, 2006 Miss. LEXIS 636, at *26-27 (Miss. Nov. 9, 2006), wherein we held that an agent who stole money from a limited liability company was improperly indicted and convicted under the Embezzlement Statute because the business was neither an "incorporated company" nor a "private person." Acknowledging the unambiguous language of the statute, we refused to broaden the two categories of embezzlement "victims" to cover limited liability companies (despite the fact that limited liability companies are "artificial persons"). ***Id.*** at *23-24. Because the State could not produce legally sufficient evidence on each element of the crime of embezzlement, we reversed and rendered the defendant's conviction. ***Id.*** at *27-28.

¶16. In an attempt to make the Embezzlement Statute say what it does not say, the dissent directs our attention to the rules of statutory construction. However, we clearly stated in ***Champluvier*** that "the plain and unambiguous language of section 97-23-19 simply obviates any requirement to apply the rules of statutory construction." ***Id.*** at *23.

¶17. The dissent tiptoes past ***Champluvier*** and cites as binding precedent ***State v. Journey***, 105 Miss. 516, 532, 62 So. 354, 354 (1913), wherein a bailee took money from a corporation and was prosecuted under the Embezzlement Statute. In sustaining the defendant's demurrer, the trial court held that the statute did not list "bailee" as one who could embezzle from an incorporated company. ***Id.*** at 355. This Court reversed, stating that "the language employed by the legislature refers to trustees, factors, carriers, or bailees of both artificial and natural persons." ***Id.*** We easily distinguish ***Journey*** by recognizing that in the case before us today, Coleman was prosecuted for taking money from a church, an entity not specifically listed in the Embezzlement Statute. In ***Journey***, it was clearly conceded that the defendant worked

8

for and embezzled from a corporation, which is a listed victim under the statute. However, to the extent the decision in **Journey** is read to conflict with our decision in **Champluvier** or our decision today, **Journey** is overruled.

*Miss. Code Ann. Section 79-11-31: Unincorporated religious societies*

¶18.    Pillow Chapel is neither a "private person" nor simply a group of private persons morphed into a private person. It is, instead, a church operating as an unincorporated religious society. Our Legislature provided for such societies in 1857 by enacting Section 79-11-31, which provides the framework for establishment of religious societies and their concomitant organization, leadership, rights to sue and be sued, etc. Specifically, it provides, in relevant part:

> Any religious society, consisting of the members of any particular denomination or congregation, desiring to act as an organized body may do so by associating together and electing or appointing from its membership any number of officers, trustees, or managers, by whatever name known, for the purpose of managing the affairs of the society. Such society or association shall keep a record of its proceedings, which shall show the name of the society, its organization, and the election of the officers, trustees, or managers; but the society so organized at each particular locality shall be a distinct and independent society. Any society so organized may sue and be sued by its society name or appellation, and process may be served on its presiding or chief officer, or secretary, or on the trustees or manager.

Miss. Code Ann. § 79-11-31 (Rev. 2004). Pillow Chapel easily meets these statutory requirements.

¶19.    Concentrating (as we are bound to do) on the statute's language, a church qualifies as a statutory "religious society" if its members (1) desire to act as an organized body; (2) associate together; (3) elect or appoint "any number of officers, trustees, or managers, by

9

whatever name known," from the membership to manage the affairs of the church; and (4) keep records of church proceedings.

**Desire to act as an organized body and membership associating together**

¶20.    There can be no serious dispute that Pillow Chapel desired to act as an organized body and that its members associated together.  According to the record, Pillow Chapel met regularly, elected deacons, had a bank account in the name of the church, incurred expenses in the church's name for maintenance and repairs, and did numerous other things as a church body, rather than as a group of private persons.  Additionally, testimony by the pastor, corroborated by Deacon Brown, demonstrated that the members intended the church to be considered a distinct entity, as they were "trying to get it incorporated."

**Officers, trustees, or managers**

¶21.    There can also be no doubt that Pillow Chapel elected or appointed from its members "any number of officers, trustees, or managers, by whatever name known," to manage the church's affairs.  Indeed, if it did not, then the indictment was faulty since it averred that Pillow Chapel had deacons who were trustees, as they were in positions of trust for the church, and that the money was embezzled "without the consent of James Brown, Trustee, and Pillow Chapel, M.B. Church."  Although Pillow Chapel had only two deacons, the statute does not require more than two, but rather provides for "any number . . . by whatever name known."

**Records kept of church proceedings**

¶22.    The record clearly indicates Pillow Chapel kept records of its proceedings, although, because of a fire, the existing records presented at trial consisted of thirty-six handwritten

10

pages in a lined notebook. These records reflected discussions of such matters as offerings, the dates for activities such as Bible study, future events, the ushers' schedule, etc. While it is true that the church's records are not numerous, they do exist. We also note, by way of comparison, that our corporate statutes require corporations to keep numerous permanent records. *See* Miss. Code Ann. § 79-4-16.01 (Rev. 2004). However, this Court has never disregarded a corporate entity simply because it did not keep records. *See, e.g.*, **T.C.L., Inc. v. Lacoste**, 431 So. 2d 918, 922 (Miss. 1983), *overruled in part on other grounds by* **C & C Trucking Co. v. Smith**, 612 So. 2d 1092, 1105-06 (Miss. 1992); **Richardson v. Jenkins Builders, Inc.**, 737 So. 2d 1030, 1031-32 (Miss. Ct. App. 1999).

¶23. Thus, based upon the record, we cannot say that Pillow Chapel does not qualify under the statute as a religious society, which is *not* a private person, but rather, a separate entity under our law.

*Miss. Code Ann. Section 97-17-41(2) – "property of a church"*

¶24. We have searched the Mississippi Code to learn whether the Legislature saw fit to provide protection to churches (whether or not they qualify as religious societies) that might be victimized by thieves, whether internal or external. If the Legislature has provided a separate statute recognizing a church as a victim, that fact would obviously further indicate that the Embezzlement Statute was not intended to redundantly cover unincorporated churches as potential victims. Not surprisingly, the Legislature indeed saw the need to enact a law which did, in fact, recognize a church (such as Pillow Chapel) as a potential victim:

> Every person who shall be convicted of taking and carrying away, feloniously, the *property of a church*, synagogue, temple or other established place of worship, of the value of Five Hundred Dollars ($500.00) or more, shall be

11

guilty of grand larceny, and shall be imprisoned in the Penitentiary for a term not exceeding ten (10) years, or shall be fined not more than Ten Thousand Dollars ($10,000), or both.

Miss. Code Ann. § 97-17-41(2) (Rev. 2004) (emphasis added).[5]

¶25.    Clearly, Coleman could have been indicted under this statute. *See Ellis v. State*, 469 So. 2d 1256, 1260 (Miss. 1985) (affirming conviction for grand larceny for stealing church property); *Garrett v. State*, 213 Miss. 328, 331, 56 So. 2d 809, 810 (1952) (affirming conviction for grand larceny under prior code provision for stealing church property). *Stewart v. State*, 839 So. 2d 535, 538 (Miss. Ct. App. 2002) (affirming conviction for burglary with underlying offense of larceny for stealing church property).

## CONCLUSION

¶26.    We decline to speculate why Coleman was not indicted and prosecuted under Section 97-17-41(2), which specifically makes the "taking and carrying away, feloniously, the property of a church" a crime. We are required to deal with the reality before us, that is, that Coleman was convicted under the Embezzlement Statute, which requires the victim be an incorporated company or a private person. Since Pillow Chapel is neither, we must affirm the judgment of the Court of Appeals, reverse Coleman's conviction, and render judgment here discharging Coleman.

¶27.    **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY IS REVERSED AND RENDERED.**

---

[5] We view the Legislature's enactment of Section 97-17-41 the same year it enacted the Embezzlement Statute as a further indication that the term "private person" found in the latter does not encompass the terms "church, synagogue, temple, or other established place of worship" found in the former. We also note that both statutes carry the same potential punishment.

**WALLER, P.J., DIAZ, CARLSON AND GRAVES, JJ., CONCUR. RANDOLPH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J., COBB, P.J., AND EASLEY, J.**

**RANDOLPH, JUSTICE, DISSENTING:**

¶28.   The majority decision not only requires a subversion of the plain language of Miss. Code Ann. Section 97-23-19 with an esoteric analysis which defeats the very purpose and intent of the legislative act, but also overrules a nearly century old precedent of this Court, but not before declaring the precedent case distinguishable, save for this Court's recent pronouncement regarding Miss. Code Ann. Sect. 97-23-19. *See **Champluvier v. State,*** 2006 Miss. LEXIS 636 (Miss. 2006). *Contra **State v. Journey,*** 105 Miss. 516, 62 So. 354 (1913).

¶29.   Furthermore, it invalidates the verdict of twelve jurors, who found Coleman guilty, and finally, voids the trial court's ruling, which was based on this Court's decision in ***Journey,*** all without finding that the trial court abused its discretion or that there was not sufficient, credible evidence to support the jury's verdict of guilty. The majority fails to address the appropriate standard of review by revising the issue before this Court by stating the question presented is "whether the deacon was indicted and tried under the correct statute," which correctly would require a de novo standard of review. However, such issue  was not pled by either party. This Court was asked to review the denial of Coleman's Motion for a Directed Verdict. "When considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

13

reasonable doubt." ***Sipp v. State,*** 936 So.2d 326, 333 (Miss. 2006). After review of the record, this Court should respect the verdict by the jury, as well as recognize that the trial court correctly based its decision on established authority, *i.e.,* ***Journey,*** which before today's decision has never been criticized, much less overruled.

¶30.   No citation is required for the proposition that the law recognizes persons, albeit natural or artificial. The trial court correctly found that Pillow Chapel Missionary Baptist Church was a private artificial person. ***Journey*** clearly recognized both natural and artificial persons. In ***Journey,*** a bailee was indicted under the predecessor statute to Miss. Code Ann. Section 97-23-19 for embezzling from a corporation. ***Journey,*** 62 So. at 354-55. The trial court granted Journey's demurrer based on Journey's contention that a bailee was not one of the listed individuals who could embezzle from an incorporated company, but rather was listed as one who could embezzle from a private person. In reversing the trial court's ruling, this Court stated the following, "We do not so construe the statute. It is our opinion that the language employed by the legislature refers to *trustees*, factors, carriers, or bailees of both *artificial* and natural *persons*." ***Id.*** at 355 (emphasis added).

¶31.   The Court of Appeals circumvented ***Journey*** by finding that the current statute superseded ***Journey,*** thereby avoiding this Court's clear pronouncement, and defiantly declared that ***Journey*** was no longer applicable. ***Coleman v. State,*** 2005 Miss. App. LEXIS 795, 797 (Miss. Ct. App. 2005). A thorough research of the evolution of Miss. Code Ann. Sect. 97-23-19, leads to the conclusion that there were no such changes. Accordingly, ***Journey*** was binding precedent for all courts of this state.

14

¶32. The majority concedes the *church* had money embezzled from it. Was not the church a group of private natural persons which collectively constitute a separate artificial person, *i.e.,* Pillow Chapel? Following that path, I am led to the same destination, even had the analysis been limited to the church's members, who are private natural persons. Either analysis results in either a person or persons being the victim of Coleman's crime.

¶33. The majority's analysis of Miss. Code Ann. Section 97-23-19 is flawed as it fails to consider established case law*,* common meanings of words*,* and the guidelines provided by the Legislature to interpret its statutes, which begin at Miss. Code Ann. Section 1-3-1,"This chapter is applicable to every statute unless its general object, or the context of language construed, or other provisions of law indicate that a different meaning or application was intended from that required by this chapter."

¶34. Furthermore, the Legislature has provided a specific statute which addresses issues we seek to resolve today. "Words used in the singular number only, either as descriptive of persons or things, shall extend to and embrace the plural number; and words used in the plural number shall extend to and embrace the singular number, except where a contrary intention is manifest." Miss. Code Ann. Section 1-3-33. Miss. Code Ann. Section 97-23-19 fails to declare that a "private person" is to be used only in the singular.

¶35. Additionally, Miss. Code Ann. Section 1-3-65 instructs, "All words and phrases contained in the statutes are used according to their common and ordinary acceptation and meaning; but technical words and phrases according to their technical meaning." As my esteemed colleague, Justice Dickinson, recognizes those who may be prosecuted for embezzlement are "limited to certain persons who steal from 'any private person,'" let us

examine the common meanings of "private" and "person" as defined by Webster's Dictionary. Private is defined as "(4) Belonging to a specific person or persons; (5) Not in an official or public position; (6) Not public." Webster's further provides the *core meaning:* belonging or confined to a particular person or group...." Webster's II New College Dictionary 880 (2001). The definition of person is as follows: "(7) *Law* A human being or organization with legal rights and duties." Webster's II New College Dictionary 820 (2001).

¶36.     Coleman's felonious conduct fits squarely within Miss. Code Ann. Section 97-23-19. Coleman was a trustee who "secreted, concealed, or converted to his own use, "money which shall have come or been intrusted to his care or possession by virtue of his office." *See* Miss. Code Ann. § 97-23-19.

¶37.     Additionally, the majority asserts that Coleman's crime may fall under the purview of Miss. Code Ann. Section 97-17-41(2), regarding taking the property of a church. In the cases cited by the majority, each and every defendant was charged with *breaking into* a church and stealing property which never was lawfully entrusted to them. Coleman was a trustee and deacon of the church, who lawfully came into possession of the money, before he criminally converted it to his own use. The case sub judice is readily distinguishable from the line of cases cited by the majority. Assuming arguendo Coleman was guilty of that crime as well, it is not our lot to direct what crime the District Attorney *should have* charged a defendant. Our charge is restricted to examining the statute at issue and case precedent. In applying these to the facts of this case, I agree with the jury and trial judge that Coleman was guilty of embezzlement.

16

¶38. Coleman additionally satisfies the statute's requirement of being an agent or servant of any private person who fraudulently secreted, concealed, or converted to his own use money which was in his possession by virtue of his office as a deacon. In Footnote 3, the majority notes those who may be prosecuted from embezzling from a private person are trustees, factors, carriers, bailees, clerks, agents, and servants. Consistent with the statute, as well as this Court's holding in *Journey,* Coleman is a trustee, guilty of embezzling from a private person. *See State v. Journey,* 105 Miss. 516, 62 So. 354 (1913).

¶39. This Court has made clear the constituent elements of the offense of embezzlement, those being: "(1) an agent or trustee of a private person, (2) embezzling or converting to his own use, (3) rights in action, money, or other valuable security, effects or property of any kind, (4) which have been intrusted to his care or possession by virtue of his position or employment." *May v. State,* 240 Miss. 361, 363, 127 So.2d 423, 425 (1961). Miss. Code Ann. Section 97-23-19, as well as this Court's clear rulings on the elements of the offense of embezzlement clearly support Coleman's conviction for stealing $1,600 from Pillow Chapel.

¶40. The majority's holding today leaves us with a parallel paradoxical result to that addressed in my dissent in *Champluvier v. State. See Champluvier v. State,* 2006 LEXIS 636 at ¶ 26 (Randolph, J., dissenting). Only now the majority has taken it a step further, *i.e.,* if a trustee steals from an unincorporated church, he is not guilty of the crime of embezzlement.

**SMITH, C.J., COBB, P.J., AND EASLEY, J., JOIN THIS OPINION.**