LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. A jury in the Harrison County Circuit Court found Patrick Michael Serge guilty of home-repair fraud. The trial court sentenced Serge to ten years, with one and one-half years to serve in the custody of the Mississippi Department of Corrections, eight and one-half years suspended, and five years of post-release supervision. Serge was also ordered to pay a $1,000 fine and $27,000 in restitution. Serge now appeals asserting the home-repair-fraud statute does not apply to new construction, and the verdict is against the overwhelming weight of the evidence.
FACTS
¶ 2. Serge moved to the Mississippi Gulf Coast in October 2005 and set up Central Development Group (CDG) in order to rebuild homes destroyed by Hurricane Katrina. Serge testified that by 2007, CDG was involved in only new home construction. Mark and Helene Ederer’s home in Ocean Springs, Mississippi, was completely destroyed by Hurricane Katrina, except for the slab. Mark testified he was responsible for removing the slab. The Ed-erers decided to rebuild their home at the same location. After observing a house under construction by Serge and speaking with other clients, they arranged a meeting with Serge. After several meetings, the Ederers signed a contract with Serge on August 15, 2007. The Ederers then paid a down payment of $27,000, which was ten percent of the contract price for constructing the new home.
¶ 3. At some point after signing the contract, Serge contacted Helene and asked her to obtain an elevation certificate on the lot. Serge also told Helene the engineering plans had been ordered.
¶ 4. On September 6, 2007, the Ederers received a letter from Serge. This letter was dated August 20, 2007, and indicated Serge was having financial problems and would be forced to file for bankruptcy. Serge testified that the date on the letter was incorrect and that it was actually written much later after the family relocated to Alabama in late August or early September 2007. In fact, the envelope is included in the record and shows the letter was not mailed until September 4, 2007. Serge never filed for bankruptcy.
¶ 5. Serge and his wife, Luanne, testified they began to have cash-flow problems around the time the Ederers’ contract was signed. Luanne testified they received a large payment from another client but were unable to deposit the check because another payor, Margo Brown, refused to endorse the check due to a disagreement with Serge. This occurred after the Eder-ers’ contract had been signed. Around this same time, Brown also refused to disburse the final draw upon the completion of the home Serge was budding for her. Serge stated that he intended to *159 perform under the contract but was unable to do so due to cash-flow problems. According to Luanne’s testimony, the Eder-ers’ $27,000 down payment was used as follows: $6,300 for payroll; $15,000 to a concrete company; $5,200 for materials; and the rest for car parts. It appears the materials bought were not for construction on the Ederers’ house. Luanne also testified Serge had refused to cash his most recent payroll checks.
¶ 6. Kenneth Allen, an investigator with the Attorney General’s Office, investigated Serge. Allen testified he did not know whether any of the money from the Eder-ers’ down payment was used by Serge personally. Allen noted that Serge took the down payment, deposited it in the CDG business account, and used the money to pay for materials and labor-which Allen admitted was a legitimate method of conducting business.
DISCUSSION
I. APPLICABILITY OF STATUTE
¶7. In his first issue on appeal, Serge argues that the home-repair-fraud statute, Mississippi Code Annotated section 97-23-103 (Rev.2006), does not apply to new construction; thus, we should reverse the guilty verdict and render. Serge filed a motion to dismiss the indictment, which the trial court denied. We review questions of statutory interpretation de novo. Coleman v. State, 947 So.2d 878, 880 (¶ 9) (Miss.2006). “[P]enal statutes are to be interpreted strictly against the state and construed liberally in favor of the accused.” McLamb v. State, 456 So.2d 743, 745 (Miss.1984). However, “[w]hen the words of a statute are plain and unambiguous!,] there is no room for interpretation or construction, and we apply the statute according to the meaning of those words.” Coleman, 947 So.2d at 881 (¶ 10) (citing Harrison v. State, 800 So.2d 1134, 1137 (¶ 12) (Miss.2001)).
¶8. According to section 97-23-103(l)(a), “home repair” is defined as “the fixing, replacing, altering, converting, modernizing, improving of or the making of an addition to any real property primarily designed or used as a residence.” The statute also contains a section describing what home repair does not include. New home construction is not listed in this particular subsection as an exclusion. See Miss.Code Ann. § 97-23-103(l)(a)(ii). According to The Merriam-Webster Dictionary, replace is defined as “to put something new in the place of.” From the plain reading of the statute, it is clear that the statute is designed to prevent unscrupulous contractors from defrauding homeowners who are in need of repairs to their damaged homes, whether the damage is total or partial. We cannot find that it was the intent of the Legislature for this statute to apply only to those homeowners whose homes are partially damaged and not to those whose homes are completely destroyed. Accordingly, we find no merit to this issue.
II. OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 9. In his other issue on appeal, Serge argues the verdict is against the overwhelming weight of the evidence. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). Furthermore, it is well-settled law that the jury determines the credibility of the witnesses and resolves conflicts in the evidence. Davis v. *160 State, 866 So.2d 1107, 1112 (¶ 17) (Miss.Ct.App.2008).
¶ 10. According to section 97-23-103(2), the elements of home-repair fraud are as follows:
(2) A person commits the offense of home repair fraud when he knowingly:
(a) Enters into an agreement or contract, written or oral, with a person for home repair, and he knowingly:
(i) Misrepresents a material fact relating to the terms of the contract or agreement or the preexisting or existing condition of any portion of the property involved, or creates or confirms another’s impression which is false and which he does not believe to be true, or promises performance which he does not intend to perform or knows will not be performed;
(ii) Uses or employs any deception, false pretense or false promises in order to induce, encourage[,] or solicit such person to enter into any contract or agreement;
(iii) Misrepresents or conceals either his real name, the name of his business!,] or his business address; or
(iv) Uses deception, coercion!,] or force to obtain the victim’s consent to modification of the terms of the original contract or agreement;
(b) Damages the property of a person with the intent to enter into an agreement or contract for home repair; or
(c) Misrepresents himself or another to be an employee or agent of any unit of the federal, state or municipal government or any other governmental unit, or an employee or agent of any public utility, with the intent to cause a person to enter into, with himself or another, any contract or agreement for home repair.
Section 97-23-103(3) states: “Intent and knowledge shall be determined by an evaluation of all circumstances surrounding a transaction!,] and the determination shall not be limited to the time of contract or agreement.” The State put on proof that Serge entered into a contract with the Ederers on August 15, 2007, and the Eder-ers paid Serge a down payment of $27,000. The Ederers testified that shortly thereafter they received a letter from Serge, which was dated just five days after the contract was signed, indicating that Serge was unable to complete construction on their home and would be filing for bankruptcy. Serge never returned any of the Ederers’ down payment. The Ederers testified that Serge never indicated that he was having financial difficulty or cash-flow problems when he accepted their down payment. Helene testified that Serge stated the down payment would be used for materials on the Ederers’ new home. As of trial, Serge had not filed for bankruptcy.
¶ 11. We find that the jury could infer from the evidence produced during trial that Serge never intended to complete construction on the Ederers’ new home. We cannot find that to allow the verdict to stand would sanction an unconscionable injustice; thus, we affirm.
If 12. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF HOME-REPAIR FRAUD AND SENTENCE OF TEN YEARS, WITH ONE AND ONE-HALF YEARS TO SERVE, EIGHT AND ONE-HALF YEARS SUSPENDED, AND FIVE YEARS OF POST-RELEASE SUPERVISION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $1,000 FINE AND $27,000 IN RESTITUTION, IS AFFIRMED. ALL *161 COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY.