KITCHENS, PRESIDING JUSTICE, DISSENTING:
 

 ¶ 34. Officer Jason Johns's traffic stop of Kendall Martin was not, in fact, based upon probable cause. Therefore, the trial court erred in denying Martin's motion to suppress, and I respectfully dissent.
 

 ¶ 35. The Mississippi careless driving statute provides that: "[a]ny person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving," which "shall be considered a lesser offense than reckless driving."
 
 Miss. Code Ann. § 63-3-1213
 
 (Rev. 2013). I agree with the majority that a law enforcement officer has
 
 probable cause
 
 to initiate a traffic stop upon observation of the commission of a traffic violation. Maj. Op. ¶ 12 (citing
 
 United States v. Rosales-Giron
 
 ,
 
 592 Fed.Appx. 246
 
 , 251 (5th Cir. 2014) ).
 

 ¶ 36. At the hearing on Martin's motion to suppress, Officer Johns testified that while driving eastbound on I-20, at about the 66-mile marker, he observed a Chevrolet SUV, which later he determined was being driven by Martin, "[run] over the right lane fog line." Officer Johns then "pulled up next to him on the driver's side, because I look inside the vehicles before I stop then, and made sure he had his seatbelt on, and then pulled in behind him, stopped him." Officer Johns says that he stopped Martin for careless driving. The officer testified at the hearing on the motion to suppress that he made the decision to stop Martin's vehicle "[w]hen I seen him hit the line ...." At trial, Officer Johns testified that, after observing the vehicle "[run] over the fog line
 
 [2]
 
 on the right side of the roadway," he then "got up beside" the vehicle for the purpose of observing "who's in the vehicle," whether the vehicle's occupants were seatbelted, and "how many occupants are in the vehicle for officer safety."
 

 ¶ 37. When he ascertained that the vehicle's sole occupant was wearing a seatbelt, Sergeant Johns slowed down and "dropped in behind" the vehicle. He then observed the vehicle get "real close to" the fog line. It was at that point that Sergeant Johns activated his blue lights and pulled the vehicle over for careless driving at about the 68-mile marker, west of the Pelahatchie exit. Sergeant Johns approached the passenger side of the vehicle, examined the driver's license and insurance cards, and determined that the driver was Kendall Martin.
 

 ¶ 38. At trial, Officer Johns testified that he had not decided to pull Martin over after perceiving that he "ran over the fog line," but rather that he had been "in the process of pulling him over." He then stated that "I don't know if I would have stopped him if he had not
 
 hit it
 
 again or if I would." (Emphasis added.) When asked specifically whether he had intended to pull Martin over
 
 after
 
 having observed him running over the fog line, Officer Johns stated the following: "I don't know. Probably I might have let him go, but when he
 
 hit it
 
 again, I mean, that did it." (Emphasis added.)
 

 ¶ 39. Officer Johns failed to describe the point at which he decided to pull Martin
 over and whether his decision was triggered by Martin's having "[run] over the fog line" or his having later come "real close" to it. Officer Johns's testimony lacked consistency with regard to Martin's latter encounter with the fog line. He could not articulate whether Martin had "hit" the fog line or whether he had come "real close" to it. And the video of the stop does not, as the majority finds, support Officer Johns's testimony. Maj. Op. ¶ 20.
 
 [3]
 

 ¶ 40. To the extent Officer Johns testified that Martin's vehicle came "real close" to the fog line, such observation, standing alone, would have provided no probable cause for Officer Johns to initiate a traffic stop.
 
 See
 

 Miss. Code Ann. § 63-3-603
 
 (d) (Rev. 2013) ("Upon all roadways any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall be driven ... as close as practicable to the right-hand curb or edge of the roadway ...."). No violation of Section 63-3-1213 occurs when a person drives
 
 within
 
 the "width, grade, curves, corner, traffic and use of the streets ...." Officer Johns lacked probable cause to stop Martin for coming "real close" to, but remaining
 
 within
 
 the "width, grade, curves, corner, traffic and use of the streets ...." Such driving does not constitute a traffic violation. Accordingly, the only question before the Court is whether Martin's having "[run] over the fog line on the right side of the roadway" a single time provided probable cause to stop.
 

 ¶ 41. Many of the cases cited by the majority involve more egregious traffic violations, relatively speaking.
 
 See
 

 United States v. Diaz
 
 ,
 
 802 F.3d 234
 
 , 238 (2d Cir. 2015) ("the defendants' truck drove over the fog line twice ....");
 
 Rosales-Giron
 
 ,
 
 592 Fed.Appx. at 247
 
 ("While observing eastbound traffic, the Trooper heard the sound of an eastbound vehicle driving on the rumble strips (the indentations on the side of the road that alert drivers to alter their trajectory), outside (to the right of) the fog line (a white line on the right side of the right lane on a highway). Because this rumbling 'caught [his] eye,' the Trooper concluded the vehicle had run off the road.");
 
 Nolan v. State
 
 ,
 
 182 So.3d 484
 
 , 487 (Miss. Ct. App. 2016) ("Officer Ryan Ainsworth observed Nolan's vehicle traveling at an unsafe distance behind another vehicle on Rice Road in Ridgeland, Mississippi. Nolan's vehicle then swerved, and his passenger-side tires struck the fog line on the right side of the road.");
 
 Ellis v. State
 
 ,
 
 77 So.3d 1119
 
 (Miss. Ct. App. 2011) ("Patrolman Conner based his stop upon the belief that Ellis was driving erratically .... Patrolman Conner observed Ellis cross from the fog line to the center line at which point Conner turned on his blue lights to make the stop.");
 
 Martin v. State
 
 ,
 
 43 So.3d 533
 
 , 533 (Miss. Ct. App. 2010) ("Trooper Hamblin explained that Tony Martin's vehicle 'went from point A to point B and right back. He didn't [simply] drift over to the fog line.' ");
 
 Shelton v. State
 
 ,
 
 45 So.3d 1203
 
 , 1208-09 (Miss. Ct. App. 2010) ("According to Deputy Sanders,
 the driver of the rental car, Calvin, crossed over the right fog line and then over-compensated left and crossed the lines that divided two lanes. Deputy Sanders testified that Calvin drove over the fog line and the lane-divider lines twice.");
 
 Doolie v. State
 
 ,
 
 856 So.2d 669
 
 (Miss. Ct. App. 2003) ("Gill Baker, a DUI officer with the Jackson Police Department, observed the vehicle in front of him cross the fog line three times.");
 
 Blake v. State
 
 ,
 
 825 So.2d 707
 
 , 708 (Miss. Ct. App. 2002) (Officer "testified to having seen Blake's truck enter the roadway in an erratic manner and to having followed for a distance and observing the truck swerving from the center line to the fog line of the road.");
 
 United States v. Escalante,
 

 239 F.3d 678
 
 , 681 (5th Cir. 2001) ("As Deputy Sanders followed Escalante, Escalante weaved across the divider lines at least twice.");
 
 Henderson v. State
 
 ,
 
 878 So.2d 246
 
 , 247 (Miss. Ct. App. 2004) ("During the early morning hours of January 17, 2002, a police officer noticed Efrem Henderson driving his vehicle erratically. The officer stated that Henderson almost hit a curb, stopped at a stop sign, then proceeded through the intersection and almost hit another curb.");
 
 Leuer v. City of Flowood
 
 ,
 
 744 So.2d 266
 
 , 267 (Miss. 1999) ("Officer Brian Harper of the Flowood Police Department stopped Leuer after he observed his vehicle run off the road onto the shoulder, make a left turn and then go out into the middle of the roadway.").
 

 ¶ 42. Only three of the cases cited by the majority stand for the proposition that a law enforcement's officer's observation of a singular instance of "[running] over the fog line on the right side of the roadway" or bumping the fog line, standing alone, supports a finding of probable cause sufficient to justify a traffic stop. In other words, these three cases stand for the proposition that a law enforcement officer's observation of a vehicle's having "[run] over the fog line" or bumped the fog line a single time, without more, justifies a stop based on probable cause because the officer observed vehicle's driver commit the crime of careless driving.
 
 [4]
 

 See
 

 Williams v. State
 
 ,
 
 126 So.3d 85
 
 (Miss. Ct. App. 2013) (Law enforcement officers observed a vehicle "weave out [its] lane of traffic and across the fog line ....");
 
 Dominick v. State
 
 ,
 
 108 So.3d 452
 
 , 456 (Miss. Ct. App. 2012) ("Officer Blissard testified that Dominick's car 'bumped' or 'simply rode' the fog line prior to changing lanes.");
 
 Tran v. State
 
 ,
 
 963 So.2d 1
 
 (Miss. Ct. App. 2006) ("Deputy Penn saw a westbound 1996 Ford F-150 pickup cross the right-hand 'fog line.' ").
 

 ¶ 43. In other jurisdictions, a probable cause finding based on careless driving is supported by more egregious conduct than a singular instance of crossing the fog line.
 
 See
 

 Stuart v. State
 
 ,
 
 525 S.W.3d 494
 
 , 498 (Ark. Ct. App. 2017) (Police report supported a probable cause finding because it stated that: "(1) the police received a call about a reckless driver in a red Ford truck on Highway 425, and [Officer] Slaughter located the truck and followed it; (2) Slaughter observed the truck 'swerving back and forth inside its lane'; (3) [Officer] Slaughter observed the truck '[drive] into the turning lane and back into its own lane.' ");
 
 Hines v. Commonwealth
 
 ,
 
 2014 WL 6686794
 
 , *1 (Ky. Ct. App. Nov. 26, 2014) ("Officer Matt Matney of the Greensburg Police Department observed a motor vehicle weaving and swerving over the center line and fog line of the highway.");
 
 State v. Hansen
 
 ,
 
 2014 WL 4922865
 
 , *2 (Mont. Sept. 30, 2014) ("Officer Reichert observed Hansen's vehicle drifting
 within the lane, varying speed, and touching the centerline and fog line multiple times.");
 
 Commonwealth. v. Houck
 
 ,
 
 102 A.3d 443
 
 , 446 (Pa. Super. Ct. 2014) ("Traveling behind the truck for approximately two miles, Trooper Ives observed the vehicle weaving across the lane of travel crossing the double yellow line and onto the fog line for some distance before Trooper Ives activated his lights.");
 
 State v. Enright
 
 ,
 
 416 N.J.Super. 391
 
 ,
 
 4 A.3d 1027
 
 , 1029 (2010) ("[Officer Eric] Bittman "observed [Enright's] vehicle 'straddling the fog line ... drift to the shoulder ... and cross the-the two lane dividing lanes.' ");
 
 State v. Richardson
 
 ,
 
 622 N.W.2d 823
 
 , 825 (Minn. 2001) (After a particular "car was reported to be 'driving all over the road,' " a "police officer, driving ... and monitoring the police radio, saw an approaching red vehicle cross over the fog line and come back across its lane to the center line.").
 
 Cf.
 

 State v. Seeman
 
 ,
 
 2013 WL 6390163
 
 , *1 (Minn. Ct. App. Dec. 9, 2013) (Evidence was sufficient to support a conviction of careless driving where "the arresting officer testified that he observed a truck driven by appellant traveling at a greater-than-posted speed on the on-ramp going east on I-94 from Weaver Lake Road and also crossing over the right white fog line. The officer, who followed the truck in his squad car, testified that he saw it drift over into the left lane of traffic and speed up to about 68 miles per hour as clocked on radar. He observed the truck make a full turn while staying over the fog line and then drift into another travel lane going south on I-494.").
 

 ¶ 44. Other courts have determined that probable cause or reasonable suspicion were altogether lacking.
 
 State v. Peele
 
 ,
 
 196 N.C.App. 668
 
 ,
 
 675 S.E.2d 682
 
 , 687 (2009) (Officer had no reasonable suspicion to stop even though an anonymous tip reported that the defendant's vehicle had been driving carelessly. "The police officer, who responded to the dispatch, found a burgundy Chevrolet pickup truck at a stoplight, but did not observe any careless or reckless driving as defendant negotiated the intersection, turned, and drove down the road. At most, the officer saw defendant on a single occasion float to the dotted line and then float back to the fog line.");
 
 State v. Roark
 
 ,
 
 229 S.W.3d 216
 
 , 217 (Mo. Ct. App. 2007) (Officer lacked reasonable suspicion to stop and conduct a field sobriety test because the "[State Trooper Douglas] Barklage testified at trial that he saw Roark's passenger-side tires cross the fog line twice, onto the paved shoulder of the highway ....");
 
 Commonwealth v. Garcia
 
 ,
 
 859 A.2d 820
 
 , 821-22 (Pa. Super. Ct. 2004) ("As appellant neared Officer DeHoff's car, appellant drove over to his right and 'straddled' the white line on the shoulder or berm of the road. Officer DeHoff promptly turned his vehicle around and began to follow appellant. On the next block he noticed that as another car approached appellant from the opposite direction of traffic, appellant again drove over the white berm line until the oncoming car passed.").
 

 ¶ 45. I vehemently disagree with the majority and the Mississippi Court of Appeals in
 
 Williams
 
 ,
 
 Dominick
 
 , and
 
 Tran
 
 that a single instance of crossing or bumping the fog line, without more, provides probable cause for a law enforcement officer to initiate a careless driving traffic stop. No other court in the United States has held that such minimal conduct as Officer Johns observed justifies a stop for careless driving. Yet the Mississippi Court of Appeals-and now the Mississippi Supreme Court-have whittled down the protections of the Fourth Amendment to the United States Constitution and Article 3, Section 23, of the Mississippi Constitution such that any vehicular movement in the direction of or over a fog line that is perceived by a law
 enforcement officer, without more, constitutes careless driving and provides an objective basis on which a traffic stop may be initiated. That is not enough, and the standard articulated by the Court of Appeals and adopted by this Court runs afoul of the constitutional protections we are bound by our judicial oaths to uphold and defend.
 

 ¶ 46. And this Court, in holding that Section 63-3-1213 was not unconstitutionally vague, also held that the statute requires a showing of negligence: "the statute echoes the familiar tort law standard, requiring that drivers on Mississippi roads exercise the same standard of care as a prudent person would in the same circumstances."
 
 [5]
 

 Leuer
 
 ,
 
 744 So.2d at 270
 
 . The United States Court of Appeals for the Fifth Circuit also upheld the statute with the understanding that "[b]ecause it applies only to conduct that is negligent, such that the conduct endangers the motorist or others, the Mississippi law does not empower the police to punish whatever conduct they choose."
 
 Escalante
 
 ,
 
 239 F.3d 678
 
 . Officer Johns never testified, either explicitly or implicitly, that Martin's vehicle was being driven negligently.
 

 ¶ 47. "It is bedrock law in Mississippi that criminal statutes are to be strictly construed against the State and liberally in favor of the accused."
 
 Coleman v. State
 
 ,
 
 947 So.2d 878
 
 , 881 (Miss. 2006) (citing
 
 McLamb v. State
 
 ,
 
 456 So.2d 743
 
 , 745 (Miss. 1984) ). It is true, as the majority has observed, that this Court has upheld a finding of probable cause in the context of a mistaken but reasonable belief that the that the accused was operating a vehicle in violation of the traffic laws.
 
 Harrison v. State
 
 ,
 
 800 So.2d 1134
 
 , 1139 (Miss. 2001) ("In the instant case, the two deputies paced Harrison as driving between 67-70 miles per hour, which was in violation of the posted sixty (60) mile per hour speed limit. Regardless of whether there were construction workers present in the area the deputies had an objective reasonable basis for believing that Harrison violated the traffic laws of Mississippi by exceeding the speed limit."). In the context of the careless driving statute, where the standard is negligence, an "objective reasonable basis" for a probable cause traffic stop requires more than a singular instance of crossing or bumping the fog line, particularly in light of our mandate to construe criminal statutes strictly against the State.
 

 ¶ 48. In
 
 Escalante
 
 , Judge Carl E. Stewart
 
 [6]
 
 observed in dissent that the goal of the officer who stopped Escalante's vehicle "was obviously not to catch speeders but instead to employ his drug-sniffing dog."
 
 Escalante
 
 ,
 
 239 F.3d at 682
 
 (Stewart, J., dissenting). Here, Officer Johns testified that he is "assigned to a specialized drug task force with the Rankin County Sheriff's Department" and that he had "been doing drug interdiction work pretty much my entire career." He stated that "drug interdiction" involves enforcing traffic laws and apprehending "criminals during that process." But I, as was Judge Stewart, am
 skeptical that Officer Johns's purpose that day was to catch violators of the careless driving statute. Instead, Officer Johns noticed a Chevrolet SUV with Texas plates "[run] over the fog line" once, determined the vehicle was being driven by an African-American man, and admittedly pulled up beside the vehicle to see "if he's wearing a seatbelt." Because the vehicle's occupant was lawfully belted, Officer Johns waited until the vehicle got "real close" to the fog line before initiating a stop. The entire exercise was undertaken solely for the purpose of manufacturing a pretextual excuse to stop the vehicle.
 

 ¶ 49. No Mississippi statute criminalizes a motorist's touching a fog line with the tires or any other part of a vehicle, driving across a fog line, or interacting with a fog line in any manner whatsoever. In fact, no Mississippi statute even mentions a "fog line," nor does any regulation of the Mississippi Department of Public Safety, the Mississippi Department of Transportation, or any other agency of the Mississippi government. Other than the "judge-made law" crafted by our Court of Appeals, Mississippi jurisprudence stands utterly mute on the subject of so-called fog lines. Nothing in our laws or regulations tells the public what a fog line is, what a fog line is for, where, if anywhere, such a thing should be placed on a roadway, who, if anyone, has the authority to decide whether or where to place one, or how to pay for it.
 

 ¶ 50. While law enforcement efforts to curb drug trafficking through the State of Mississippi are necessary and laudable, they must be performed in a manner consistent with the Fourth Amendment to the United States Constitution and Article 3, Section 23, of the Mississippi Constitution. Because Officer Johns did not have an objective, reasonable basis for stopping Martin's vehicle and because the trial court should have granted the motion to suppress the fruits of the illegal search, I would reverse and render his conviction.
 

 WALLER, C.J., AND KING, J., JOIN THIS OPINION.
 

 Officer Johns described the "fog line" as "the white line that runs on the outside lane before you hit the-wake-up bumpers."
 

 The majority references
 
 Dominick v. State
 
 ,
 
 108 So.3d 452
 
 , 456 (Miss. Ct. App. 2012) in which the officer who initiated the stop testified that the defendant had " 'bumped' or 'simply rode' the fog line prior to changing lanes." The Mississippi Court of Appeals determined that "[a] review of the videotape does not contradict the officer's testimony."
 

 Id.
 

 But in that case, the defendant did not dispute what the video showed and "her testimony validated the officer's conclusion."
 

 Id.
 

 Moreover, the Court of Appeals found, as the county court had found, that, while "the videotape from the front bumper of the officer's vehicle is not clear," the " 'car was too far away to see what the officer saw.' " Here, the video clearly shows what the officer saw. And the video does not show that Martin's vehicle "hit" the fog line.
 

 A law enforcement officer has
 
 probable cause
 
 to initiate a traffic stop " 'when a defendant commits a traffic violation and a law-enforcement officer observes the violation.' " Maj. Op. at ¶ 12 (quoting
 
 Rosales-Giron
 
 ,
 
 592 Fed.Appx. at
 
 251 ).
 

 The
 
 Leuer
 
 Court continued:
 

 Those few jurisdictions which have considered the constitutionality of language used in careless driving statutes have found that words communicating negligence or the absence thereof are not unconstitutionally vague.
 
 See, e.g.,
 

 State v. Merithew
 
 ,
 
 220 Neb. 530
 
 ,
 
 371 N.W.2d 110
 
 , 112 (1985) (" 'carelessly or without due caution' are synonymous with 'negligently or without due care' ");
 
 State v. Hagge
 
 ,
 
 211 N.W.2d 395
 
 , 397 (N.D.1973) (statute requiring those traveling on highways to drive "in a careful and prudent manner" not unconstitutionally vague).
 

 Leuer
 
 ,
 
 744 So.2d at 270
 
 .
 

 Judge Stewart is now Chief Judge of the United States Court of Appeals for the Fifth Circuit.