# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CP-00423-COA

**AVERY D. UNDERWOOD A/K/A AVERY UNDERWOOD A/K/A AVERY DUANE UNDERWOOD**
                                                                    APPELLANT

v.

**STATE OF MISSISSIPPI**                                            APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/22/2024 |
| TRIAL JUDGE: | HON. MICHAEL PAUL MILLS JR. |
| COURT FROM WHICH APPEALED: | ITAWAMBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | AVERY D. UNDERWOOD (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KATY TAYLOR SARVER |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 05/06/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1.     After being indicted for first-degree murder, a man plead guilty to murder in the second degree. He subsequently petitioned for post-conviction relief, claiming that his plea was involuntary and that his attorney rendered ineffective assistance. The trial court denied his claims, and he appealed. Finding no error, we affirm.

## BACKGROUND

¶2.     "In 2019, Avery Underwood pleaded guilty to charges of second-degree murder for killing his wife, Destiny Ann Underwood." *Underwood v. State*, 360 So. 3d 319 (¶1) (Miss. Ct. App. 2023). Afterward, he "filed several motions to vacate his guilty plea" and then

appealed the "dismissal of his latest one." *Id*. at 319-20 (¶1). We pointed out that we did not have jurisdiction over the direct appeal of a denial of a motion to withdraw a guilty plea. *Id*. at 322 (¶¶15-16). Accordingly, we "dismiss[ed] Underwood's appeal without prejudice so that if he chooses, he may raise his claim of ineffective assistance of counsel in a properly filed PCR motion[.]" *Id*. at 323 (¶16).

¶3. After our unanimous decision in that appeal, Underwood filed a petition for post-conviction relief in the Itawamba County Circuit Court, where he had previously plead guilty. His PCR petition asserted five grounds for relief: illegal sentence, witness intimidation, due process violations, ineffective assistance of counsel, and an involuntary guilty plea.

¶4. The record shows Underwood signed a certificate of service dated December 27, 2023, 11 days before his statutory deadline expired. There is also a letter from the Itawamba County Circuit Clerk to Underwood dated January 8, 2024. The letter is helpful and explains to the petitioner that the court had received his PCR petition "and accompanying application to proceed in forma pauperis[.]" The clerk informed Underwood that he needed to fill out and sign the particular affidavit of poverty, "which is used in this district" and was "enclosed." The circuit clerk also explained to him how to fill out a civil cover sheet.

¶5. Then, the record shows an "Affidavit of Poverty to Accompany Motion for Leave to Proceed In Forma Pauperis" Underwood completed and dated January 18, 2024. Additionally, there is a handwritten letter from Underwood to the clerk in which Underwood wrote, "I honestly have no idea how to fill out that form but I did attempt to as best as I

2

could. My filings should be timely considering my appeal was put in 1 day before my deadline"—signaling his PCR petition was delivered on January 6, 2024.

¶6. In turn, the circuit clerk sent a second letter to Underwood dated February 1, 2024, acknowledging, "Our office has received your letter along with the affidavit of poverty." There is then an order from the circuit court—initially using the wrong name of the petitioner—filed on February 16, 2024, certifying the wrongly named individual as indigent and allowing him to proceed in forma pauperis. A few days later, on February 22, 2024, the circuit court entered an amended order and corrected the petitioner's name in the order to Avery Underwood, thereby certifying Underwood as indigent and permitting him to proceed with his PCR petition in forma pauperis.

¶7. The trial court's order instructed that the State had thirty days to file a response to Underwood's PCR petition, and that Underwood then had fifteen days to file a reply after receiving the State's response.

¶8. The district attorney responded as instructed and provided a thoughtful defense to Underwood's claims. Importantly, at *no time* throughout the course of proceedings in the trial court did the State raise a time bar claim or argue that his petition was untimely filed. Subsequently, Underwood filed a timely response, and the trial court proceeded to a ruling.

¶9. The court found that Underwood's request for post-conviction relief was "ripe for review" and addressed his claims on the merits. Again, there was no mention of a time-bar.

¶10. After finding that "the Court questioned Petitioner extensively to confirm his understanding of the proceedings, the indicted charges, the reduced charges, the effect of

3

pleading—both the potential sentence and the rights that would be waived[,]" the court determined that Underwood's plea was entered knowingly, intelligently, and voluntarily. It further found the transcripts showed that at the plea hearing, "[t]he Court inquired whether Petitioner was satisfied with his counsel and counsel's performance and if anyone had exerted any pressure or made any promises to induce the plea."

¶11. Next, the circuit court determined that Underwood's claim "second guesses counsel's performance and makes unsupported allegations that another attorney could have gotten him a better deal," which "is far short of showing ineffective assistance." Consequently, the court found Underwood "has failed to show that counsel committed 'unprofessional errors of substantial gravity,' has failed to 'allege such facts with specificity and detail,' and has failed to show that 'but for counsel's error, he would not have entered the guilty plea.'"

¶12. Lastly, the circuit court found Underwood's argument that he received an illegal sentence to be without merit because he was sentenced to a term of forty years and the statutory maximum sentence for second-degree murder is forty years. Ultimately, the court denied Underwood's PCR petition.

¶13. Underwood appeals from the Itawamba County Circuit Court's order denying his PCR petition, now compressing his arguments into two points. He argues that his guilty plea was not made voluntarily and that his counsel was ineffective.

**STANDARD OF REVIEW**

¶14. "When reviewing a circuit court's denial or dismissal of a PCR motion, we will only disturb the circuit court's decision if it is clearly erroneous; however, we review the circuit

4

court's legal conclusions under a de novo standard of review." *Harvey v. State*, 373 So. 3d 593, 594 (¶3) (Miss. Ct. App. 2023) (quoting *Tingle v. State*, 285 So. 3d 708, 710 (¶8) (Miss. Ct. App. 2019)).

## I. The State waived the claim that the PCR petition was untimely.

¶15. First, we address the State's new contention on appeal that Underwood's petition in the circuit court was untimely filed. In the State's view, the filing of Underwood's petition was not complete at the circuit clerk's office before the three-year statute of limitations in the PCR statute had run. Miss. Code Ann. § 99-39-5(2) (Rev. 2020).

¶16. As a matter of law, we find this argument waived. It is well-established that

> this Court does not review matters on appeal that were not first raised at the trial level. Before an issue can be presented to this Court, it must first be presented to the trial court. This is done by an objection. A timely objection brings the issue to the court's attention, and gives it the opportunity to address the issue.

*Wilburn v. Wilburn*, 991 So. 2d 1185, 1191 (¶13) (Miss. 2008) (citations omitted). To that end, "a trial judge will not be found in error on a matter not presented to the trial court for a decision." *Taylor v. State*, 330 So. 3d 758, 769 (¶26) (Miss. 2021); *Black v. State*, 919 So. 2d 1017, 1019 (¶6) (Miss. Ct. App. 2005) ("We will not put a trial judge in error on a matter not presented to him for decision"); *Brooks v. Sanders*, 243 Miss. 46, 49, 137 So. 2d 174, 175 (1962) (Absent a motion preserving a claim of error "we have no ruling of the trial court for review on that particular point").

¶17. In certain situations, a trial court may proceed to a ruling in PCR proceedings without the benefit of the State's view on the matter. *See* Miss. Code Ann. § 99-39-11(2) ("If it

plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the petitioner to be notified").

¶18. But in this case, the trial court below ordered the district attorney to respond to the claims of the petitioner. The district attorney's office did just that, as instructed. At no point did the State, through the district attorney, argue that the PCR petition was time-barred or that Underwood's petition was incomplete. Instead, the State made a well-reasoned argument on the merits, which prevailed before the court.

¶19. The State's appellee brief concedes that the issue of timeliness was never raised, acknowledging "the trial court did not make this finding[.]" Without regard to the longstanding history of the waiver rule, the State argued "[t]his is not a close case" and shifted to address the merits only out of "an abundance of caution."

¶20. Interestingly, not only was the time-bar claim plainly waived as never previously raised in the trial court, the State's argument further failed to consider longstanding precedent regarding the prison mailbox rule or the construction of the PCR statutes. *Scruggs v. State*, 102 So. 3d 1172, 1175 (¶9) (Miss. Ct. App. 2012) ("Under the prison mailbox rule, a pro se prisoner's motion is considered filed when he delivers the papers to prison authorities for mailing"); *cf. Jewell v. State*, 946 So. 2d 810, 813 (¶9) (Miss. Ct. App. 2006) (rejecting the argument of the State that the appeal of PCR denial was untimely, and finding "that when seeking dismissal for an untimely appeal, the burden is on the State to prove that the prisoner has, indeed, failed to comply" with the applicable rules).

6

¶21. We find the State's argument that Underwood's PCR petition was untimely filed was waived. Therefore, we proceed to the merits.[1]

**II.      The guilty plea was voluntary.**

¶22. Underwood claims his plea was not voluntary as "his attorney persuade[d] him and his family to believe that his only chance to ever see his children or not end up in prison was to take a plea." In support, he presents one question from his plea where the transcript indicated he conferred with his attorney before answering the trial court.

¶23. "Our standard of review for considering the voluntariness of a guilty plea is well-settled;" we "will not set aside findings of a trial court unless such findings are clearly

---

[1] The State relies heavily on one particular case to construe Underwood's PCR petition as time-barred. *Hammett v. State*, 129 So. 3d 931, 932 (¶4) (Miss. 2014). The defendant in *Hammett* submitted a PCR petition shortly before the three-year statute of limitations for his claim expired. However, "the complaint was returned to him because he had failed to include the necessary filing fee." *Id*. The defendant then "claimed that he had refiled the complaint along with an application to proceed in forma pauperis . . . eleven days before the deadline." *Id*. "[T]he circuit court denied the motion, finding that Hammett was not entitled to any relief because it was clear from the record that Hammett did not file his petition" until 3 months later. *Id*.

The Supreme Court ultimately found "the record is inconclusive as to whether Hammett resubmitted his complaint along with the notarized IFP affidavit to prison officials for mailing to the . . . Circuit Clerk's office prior to the . . . deadline. Accordingly, [it] reverse[d] the judgment below and remand[ed] this case" for the lower court to determine whether the evidence showed *Hammett* filed on time. *Id*. at (¶10).

*Hammett* is distinguishable on the basis that there was no proof the defendant had *ever* sent in a petition to proceed in forma pauperis, and that the defendant had sat on his rights for several months. That is not the case here. There is clear evidence in the record that Underwood did, in fact, deliver a signed, sworn IFP to the circuit court. And as the gracious letter from the circuit clerk points out, his petition for filing was accepted by the clerk. The clerk's letter simply informed Underwood it needed a civil cover sheet and the proper IFP form used in that particular district before he would receive *a case number*—a detail separate from the actual acceptance of his PCR petition. And in *Hammett*, the Supreme Court did not rule that the defendant was untimely; instead, it instructed the trial court to determine whether or not there was evidence of a timely filing.

erroneous." *Malone v. State*, 375 So. 3d 713, 719 (¶16) (Miss. Ct. App. 2023) (quoting *Holland v. State*, 956 So. 2d 322, 327 (¶11) (Miss. Ct. App. 2007)).

¶24. When assessing the voluntariness of a guilty plea, "the most significant evidence of all is the thoroughness of the trial court's interrogation during the plea colloquy." *Tate v. State*, 372 So. 3d 1054, 1057 (¶7) (Miss. Ct. App. 2023). "A guilty plea is binding and valid where it is entered voluntarily, knowingly, and intelligently" by the defendant. *Id*.

¶25. The trial court conducted a thorough examination of Underwood after first placing him under oath. "[S]tatements made in open court under oath carry a strong presumption of veracity." *Baker v. State*, 217 So. 3d 711, 713 (¶7) (Miss. Ct. App. 2017).

¶26. The sequence Underwood protests occurred near the beginning of his plea colloquy. The trial judge asked, "Do you understand I will not accept your plea of guilty if you maintain that you are innocent here today?" The transcript notes that Underwood's attorney "conferred with the defendant." Next, Underwood says—under oath—"Yes, sir, Your Honor."

¶27. On appeal, Underwood implies that there is something nefarious in the transcript reflecting that he spoke with his attorney. Yet to confer with an attorney is routine, especially during an important sequence in trial or a plea hearing. Underwood also ignores that he answered the trial court in the affirmative.

¶28. Conveniently, he also omits the portions of the transcript that show him fully taking ownership of his guilty plea. After the brief hesitation, the trial judge reiterated: "I'm going to ask that question again, Mr. Underwood. Do you understand I will not accept your plea

8

of guilty if you maintain that you are innocent?" The petitioner again, swore "Yes, sir, Your Honor."

¶29. The trial court then established it was attempting to ascertain if the plea was voluntary:

> Q. Is your plea of guilty –
> A. Yes, sir.
> Q. – free and voluntary on your part?
> A. Yes, sir, Your Honor.
> Q. Mr. Underwood, do you understand that by entering a plea of guilty that you are waiving certain constitutional rights you have as a defendant in a criminal proceeding?
> A. Yes, sir, Your Honor.

Underwood then proceeded to acknowledge the rights he was waiving by pleading guilty.

¶30. The trial judge next read from the indictment charging Underwood with the deliberate design murder of his wife, Destiny Underwood. He was asked, "[D]id you understand that charge that's been filed against you in this cause?" Underwood responded, "Yes, sir, Your Honor." Critically, when Underwood was asked by the trial court, "Did you, in fact, commit that offense?" he responded, "Yes, sir."

¶31. In denying Underwood relief, the trial court reckoned that:

> During his plea colloquy, the [c]ourt questioned Petitioner extensively to confirm his understanding of the proceedings, the indicted charges, the reduced charges, the effect of pleading guilty—both the potential sentence and the rights that would be waived. The [c]ourt inquired whether Petitioner was satisfied with his counsel and counsel's performance and if anyone had exerted any pressure or made any promises to induce the plea. The [c]ourt invited Petitioner to ask any questions he had in order to clarify or explain any misunderstandings. In short, [t]he [c]ourt ensured that Petitioner's plea was entered knowingly, intelligently, and voluntarily.

¶32. We agree. The only proof in this record is that Underwood's plea was voluntary.

9

Therefore, we find the circuit court was within its discretion in finding the guilty plea was voluntarily made and not the result of coercion.

### III.   Trial counsel was not ineffective.

¶33.   Underwood also argues he should be granted relief because he received ineffective assistance of counsel.   Among other points, he argues his counsel failed to request a psychiatric evaluation, subpoena witnesses, or investigate the circumstances of the case.

¶34.   "A claim of ineffective assistance of counsel requires proof that counsel's performance was objectively deficient and that the defendant suffered prejudice as a result." *Worth v. State*, 223 So. 3d 844, 849 (¶17) (Miss. Ct. App. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "If either prong of [the test] is not met, the claim fails." *Id*.   Generally, "a voluntary guilty plea waives claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Id*. (quoting *Thomas v. State*, 159 So. 3d 1212, 1215 (¶10) (Miss. Ct. App. 2015)).   "Thus, to obtain post-conviction relief, a petitioner who pled guilty must prove that his attorney's ineffective performance proximately caused the plea—i.e., that but for counsel's errors, the petitioner would not have entered the plea." *Id*.

¶35.   But to meet this standard "requires proof beyond the petitioner's own conclusory assertions." *Id*. at 849-50 (¶17).   Underwood offers only "conclusory assertions" claiming his attorney's performance was deficient. He does not provide any affidavits or evidence beyond those bare assertions. Indeed, under oath, Underwood told the trial court he was satisfied with his attorney and agreed with the trial court's question that he was "satisfied

10

with the legal services and advice of [his] attorney," and that he was properly advised before pleading guilty. Accordingly, we affirm the circuit court's denial of relief. *See Townsend v. State*, 344 So. 3d 858, 862 (¶13) (Miss. Ct. App. 2022) (affirming the denial of PCR when the petitioner "did not support his claims of ineffective assistance of counsel with any affidavits other than his own, which does not meet the standard of our precedent").

**CONCLUSION**

¶36. For the reasons above, we affirm the trial court's order denying Underwood's PCR claims, as his guilty plea was made voluntarily, and he did not properly support his claim of ineffective assistance of counsel with sworn proof.

¶37. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., AND McDONALD, J., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WILSON, P.J., EMFINGER AND ST. PÉ, JJ. WEDDLE, J., NOT PARTICIPATING.**

**LAWRENCE, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶38. I respectfully disagree with the lead opinion's approach to the resolution of this appeal. The lead opinion determined that the State waived the argument that the PCR motion was untimely filed because "[t]his court does not review matters on appeal that were not first raised at the trial level." *Wilburn v. Wilburn*, 991 So. 2d 1185, 1191 (¶13) (Miss. 2008) (citing *Shaw v. Shaw*, 603 So. 2d 287, 292 (Miss. 1992)). However, the lead opinion fails to address the precedent set by this Court, which has ruled that PCR motions are time-barred even when the issue is raised for the first time on appeal. *See Campbell v. State*, 963 So. 2d

11

573, 576-77 (¶7) (Miss. Ct. App. 2007); *Golden v. Epps*, 958 So. 2d 271, 275 (¶7) (Miss. Ct. App. 2007). Furthermore, the Mississippi Supreme Court held just two years ago that there is no longer a fundamental-rights exception to the three-year statute of limitations for PCR motions. *Howell v. State*, 358 So. 3d 613, 615 (¶¶7-8) (Miss. 2023). The Court explained that "[t]he statute of limitations is a substantive, legislatively enacted law and not procedural"; therefore, prior judicial decisions applying fundamental rights as exceptions to these statutory bars "should hold no weight." *Id.* at (¶10) (quoting *Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 138 (¶12) (Miss. 2013)). Accordingly, because the statute of limitations is substantive law, this Court should address the time-bar issue when it is obvious from the record on appeal that the PCR motion was filed in violation of the three-year prescription. This Court has addressed the time-bar when first raised on appeal before, and we should address it in this case.

¶39.    In *Campbell*, the State, for the first time on appeal, argued that Campbell's PCR motion was time-barred. *Campbell*, 963 So. 2d at 576 (¶7). Campbell had three years from his sentencing on September 5, 2002, to file for PCR, meaning his first PCR motion, filed on March 18, 2006, was almost seven months late. *Id.* at 577 (¶7). Campbell claimed the circuit court recognized his motion as an exception to the three-year statute of limitations, but there was no indication of that in the court's order. *Id.* This Court held that Campbell's motion was barred due to its untimely filing under Mississippi Code Annotated section 99-39-5(2) (Rev. 2006).

¶40.    Similarly in *Golden*, the State argued for the first time on appeal that Golden's PCR

12

motion should have been dismissed since it was filed outside the three-year limitations period, with no applicable exceptions. *Golden*, 958 So. 2d at 275 (¶7). Golden had until August 2000 to file, but his motion to show cause was dismissed for failure to exhaust administrative procedures and was filed on November 18, 2005, over five years late. *Id.* His PCR motion was filed on January 31, 2006, five years and four months after the deadline. *Id.* Although the State did not raise the time-bar argument in the circuit court, this Court still determined that Golden's PCR motion was time-barred. *Id.*

¶41. Here, the circuit court filed the judgment of conviction sentencing Underwood on January 7, 2021. Underwood did not effectively file his PCR motion until more than three years later on February 9, 2024, when he finally cured the deficiencies in his first filing. There is nothing in the record that shows when he delivered his original PCR motion to the prison authorities to file. However, on January 8, 2024, the circuit court clerk's office sent Underwood a letter informing him that "[b]efore the Court can consider [Underwood's] application, [he] must fill out, sign and subscribe to the enclosed affidavit of poverty" and fill out a "civil cover sheet." Underwood mailed his affidavit of poverty and civil cover sheet to the clerk's office and attached a handwritten note, stating his "filings should be timely[,] considering [his] appeal was put in 1 day before [the] deadline." The handwritten note was evidence of an attempted filing of a PCR motion on January 6, 2024, which was one day before the limitations period ended. However, the court did not receive Underwood's affidavit of poverty and civil cover sheet, until February 9, 2024. Prior opinions of the supreme court and this Court have held that a filing is not effective until deficiencies are

13

cured. *See infra* ¶¶41-43. Under our law, Underwood's PCR filing was over a month late.

¶42.     Under the Mississippi Uniform Post-Conviction Collateral Relief Act (UPCCRA), a PCR motion must be filed within three years of the judgment of conviction following a guilty plea. Miss. Code Ann. § 99-39-5(2) (Rev. 2020). The prison mailbox rule states that a pro se prisoner's PCR motion is considered delivered for filing on the date the prisoner gives the document to prison officials for mailing. *Sykes v. State*, 757 So. 2d 997, 1000-01 (¶14) (Miss. 2000). In *Melton v. State*, 930 So. 2d 452, 455 (¶8) (Miss. Ct. App. 2006), this Court held that if the State wants to challenge an appeal as untimely, the State bears the burden of proving the notice was not timely mailed by the prisoner. Here, the State asserted in its brief that this matter was time-barred since the date of the filing listed on the PCR motion was February 9, 2024, because Underwood did not submit his in forma pauperis (IFP) affidavit until that date. The question became when did Underwood file his PCR motion— on January 6, 2024, the date without the IFP affidavit, or on February 9, 2024, the date Underwood cured the defect? While not exactly like this case, there is supreme court precedent that provides guidance.

¶43.     In *Hammett v. State*, 129 So. 3d 931, 932 (¶4) (Miss. 2014), an inmate who was in custody filed a "Motion to Reinstate Claim." His complaint was returned to him because "he failed to include either a filing fee or an IFP affidavit" *Id.* at 933 (¶10). Hammett then claimed that he re-filed the complaint and included an application to proceed IFP eleven days before the deadline. *Id.* The Mississippi Supreme Court explained that "[p]ursuant to Mississippi Rule of Civil Procedure 3(a), '[a] civil complaint is commenced by filing a

14

complaint with the court. A costs deposit shall be made with the filing of the complaint[.]'" *Id.* at (¶9). Furthermore, Mississippi Rule of Civil Procedure 3(c) provides that IFP status "allows those costs to be waived if a pauper affidavit is filed in the action." *Id*. The court went on to explain that according to the comment to Rule 3(a), "[a]scertaining the precise date of commencement is important in determining whether an action . . . is barred by a statute of limitations[.]" *Id*. Since the record was "inconclusive as to whether Hammett **resubmitted** his complaint along with the notarized IFP affidavit to prison officials for mailing" **prior to the deadline**, the supreme court reversed and remanded the case so the circuit court could "**determine whether Hammett submitted his petition and IFP application for mailing before the . . . deadline**." *Id*. at (¶¶10-11) (emphasis added).

¶44.    This Court addressed a similar issue in *Shelton v. State*, 984 So. 2d 320 (Miss. Ct. App. 2007). On October 4, 2002, Shelton entered a guilty plea. *Id.* at 321 (¶2). On October 3, 2005, he delivered his PCR motion to prison officials for mailing. *Id*. at (¶3). However, Shelton failed to either pay the filling fee or submit a request or affidavit for pauper's status. *Id*. On October 21, 2005, he "returned the corrected [PCR motion] with a pauper's affidavit to the court for filing." *Id*. The circuit court dismissed his motion as time-barred because it was not filed within three years of October 4, 2002. *Id*. Our Court upheld the circuit court's finding and explained that Shelton "did not deliver [the PCR motion] to prison authorities until October 3, 2005." *Id*. at 322 (¶9). "This motion was returned to him as incomplete, and he did not file a proper post-conviction relief petition with the circuit court until October 21, 2005." *Id*. Thus, Shelton's filing was time-barred under section 99-39-5(2). *Id*. at (¶10).

¶45.    Here, the record is not inconclusive as to whether Underwood resubmitted his motion along with the IFP affidavit prior to the three-year deadline. The facts clearly indicate that he corrected his PCR motion with the necessary IFP affidavit and filed the corrected PCR motion on February 9, 2024, which was over one month after the three-year time-bar. Since Underwood did not have an IFP affidavit or filing fee in his original PCR submission, his civil court filing did not commence before the three-year deadline and his resubmission was time-barred.

¶46.    While I agree with the ultimate result the lead opinion reaches, I do not agree with much, if any, of the reasoning used to get there. I would find that the three-year time-bar, as applied in *Howell*, bars this appeal ,and it should be dismissed. An inmate must comply with our rules in obtaining IFP status and paying the filing fees before his PCR motion is legally actionable. Because Underwood did not correct his deficiencies within the three-year statutory limitations period, I believe legal precedent requires us to affirm the circuit court's order. *See Campbell* 963 So. 2d at 576-77 (¶7); *Golden*, 958 So. 2d at 275 (¶7). Therefore, I respectfully concur in part and in result and dissent in part.

**WILSON, P.J., EMFINGER AND ST. PÉ, JJ., JOIN THIS OPINION.**